**In re MALDEN MILLS, INC., Debtor.**

**Bankruptcy No. 81–1640–L.**

United States Bankruptcy Court,
D. Massachusetts.

Feb. 8, 1984.

Richard Langerman, Goulston & Storrs, P.C., Boston, Mass., for debtor.

Albert L. Goldman, Angoff, Goldman, Manning, Pyle & Wanger, P.C., Boston, Mass., for Local 533, Intern. Ladies' Garment Workers' Union.

Peter H. Stewart, Asst. Atty. Gen., for the State of Maine, Bureau of Labor Standards.

## PROPOSED CERTIFICATE

THOMAS W. LAWLESS, Bankruptcy Judge.

This matter arises from the application of Malden Mills, Inc. (Malden Mills) for declaratory judgment concerning its liability for severance pay to its employees under Maine law, 26 Maine Revised Statutes Annotated (M.R.S.A.) § 625–B(2) (1980). The undisputed facts are as follows:

Malden Mills is a textile manufacturer with manufacturing facilities in at least three states: Massachusetts, Vermont and Maine. Since 1976, Malden Mills has operated a manufacturing facility in North Berwick, Maine, employing one hundred or more persons at that plant. On September 11, 1981, Malden Mills filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code and its plan of reorganization was confirmed by this Court

on April 17, 1983. During the reorganization proceedings, in February, 1982, Malden Mills notified the employees of its North Berwick, Maine facility of its intention to close the North Berwick plant and to relocate a portion of the manufacturing capability to its Barre, Vermont plant, which is more than one hundred miles from North Berwick, Maine. Subsequently, on or about October 1, 1982, Malden Mills did in fact close the North Berwick facility for three years or more have claimed, by reason of such termination and/or relocation of Malden Mills' operations at the North Berwick plant, a right to severance pay pursuant to paragraph (2) of 26 M.R.S.A. § 625–B. Malden Mills has estimated that total severance pay payable to such employees, if they are determined to be entitled to same, would not exceed $50,000.

26 M.R.S.A. § 625–B(2) provides that:

*Severance pay.* Any employer who relocates or terminates a covered establishment shall be liable to his employees for severance pay at the rate of one week's pay for each year of employment by the employee in that establishment. The severance pay to eligible employees shall be in addition to any final wage payment to the employee and shall be paid within one regular pay period after the employee's last full day of work, notwithstanding any other provisions of law.[1]

It is undisputed that Malden Mills is a "covered establishment" within the meaning of 26 M.R.S.A. § 625–B(1)(A) and that it would be liable for severance pay to its employees if it were not for Malden Mills' Chapter 11 proceedings. What is disputed is whether Malden Mills falls within the exception of paragraph (3)(A) of § 625–B which provides that "[t]here shall be no liability for severance pay to an eligible employee if ... [r]elocation or termination of a covered establishment is necessitated by a physical calamity; ..." "Physical calamity" is defined as "any calamity such as fire, flood or other natural disaster, or *the final order of any federal*, state or local government agency *including adjudicated bankruptcy*." (emphasis added). 26 M.R.S.A. § 625–B(1)(E).

Thus, the issue is whether the filing on Malden Mills' Chapter 11 petition or the confirmation of its plan of reorganization constitutes an "adjudicated bankruptcy" within the meaning of § 625–B. It is Malden Mills' position that the filing of a Chapter 11 petition under the Bankruptcy Act of 1978, Pub.L. 95–598, 92 Stat 2549, (the "Code") and the simultaneous entry of an "order for relief" pursuant to 11 U.S.C. § 301 is the Code equivalent of an "adjudicated bankruptcy" under the former Bankruptcy Act (the "Act"). The Debtor urges that inasmuch as the term "adjudicated bankruptcy" is not used in the Code, the Court should interpret the phrase "adjudicated bankruptcy" in 26 M.R.S.A. § 625–B as a reference to an "order for relief" under the Code. In response, Local 533 of the International Ladies' Garment Workers' Union (the "Union") and the State of Maine, Bureau of Labor Standards (the "State"),[2] contend that the term "adjudicat-

---

**1.** Paragraph 1 of § 625–B defines, among others, the following terms used in paragraph 2:

A. "Covered establishment" means any industrial or commercial facility or part thereof which employs or has employed at any time in the preceding 12-month period 100 or more persons.

...

C. "Employer" means any person who directly or indirectly owns and operates a covered establishment.

...

F. "Relocation" means the removal of all or substantially all of industrial or commercial operations in a covered establishment to a new location, within or without the State of Maine, 100 or more miles distant from its original location.

G. "Termination" means the substantial cessation of industrial or commercial operations in a covered establishment.

H. "Week's pay" means an amount equal to $\frac{1}{52}$nd part of the gross wages paid to an employee during the 12 months prior to relocation or termination.

**2.** The State of Maine, Bureau of Labor Standards, intervened in this matter because under the statute, 26 M.R.S.A. § 625–B(5), the Director of the Bureau of Labor Standards is authorized to supervise and to bring suit to recover any unpaid severance pay.

ed bankruptcy" is most reasonably construed as only applying to straight bankruptcy under Chapter 7, but not to a Chapter 11 reorganization. Second, the State argues that even if the Court concludes that Malden Mills' filing of a Chapter 11 petition constitutes an "adjudicated bankruptcy" within the meaning of the Maine severance pay statute, the Court must further find that the closing of the North Berwick plant was "necessitated" by the adjudicated bankruptcy. 26 M.R.S.A. § 625–B(3)(A) (liability for severance pay if relocation or termination is *"necessitated by a physical calamity"*). The State argues that unless the affect of the Bankruptcy filing itself requires the closing or relocation of the plant, it cannot be said that the Chapter 11 petition "necessitated" the closing. Finally, the State of Maine moves that the Court abstain from deciding this matter under 28 U.S.C. § 1471(d) in order to give Maine courts an opportunity to decide this issue of state law.

While this matter was under advisement awaiting certain submissions from the parties, the parties entered into a stipulation dated August 26, 1983, whereby it was agreed that if it was determined that the "adjudicated bankruptcy" exception of the Maine statute was inapplicable to Malden Mills, then Malden Mills would make payments in accordance with the terms of the statute.[3] After consideration of the briefs of the parties and the applicable authorities, I find as follows:

## DISCUSSION

The employees' right to severance pay arises solely from Maine statute and, as such, the law of the state of Maine defines the limits of this state created entitlement. "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. U.S.*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979). If the "adjudicated bankruptcy" exception is found inapplicable to Malden Mills in the instant case, no party has asserted that any federal law, including bankruptcy law,[4]

---

**3.** Assuming the "adjudicated bankruptcy" exception does not apply, the classification of the employees' § 625–B claims is not entirely clear. The Union argued that the severance pay claims are entitled to administrative expense status as "actual, necessary costs and expenses of preserving the estate ...", 11 U.S.C. § 503(b)(1)(A), because the Maine statute creates a mandatory expense which arises upon the occurrence of a trigger event that occurred during the Chapter 11 proceeding—an employee's termination caused by the decision to cease production and/or relocate work. Malden Mills argued that the severance pay claims should be treated in accordance with the First Circuit's opinion in *In re Mammoth Mart, Inc.*, 536 F.2d 950 (1976), that is, severance pay computed for post petition services is an administrative expense, severance pay generated during the priority period (§ 507(a)(3)) is a priority expense and severance pay based upon services rendered outside these two periods is a general unsecured claim.

However, the situation in *Mammoth Mart* is not directly analagous to the case at bar because in that case the severance pay claims arose from the employment contract and not by a statute. As such, it is difficult to see how the consideration analysis employed by the *Mammoth Mart* court would apply in this case. Indeed, here other factors come into play, including 28 U.S.C. § 959(b) which requires a debtor-in-possession to comply with all valid laws of the state in which it is located. In any event, the monetary dispute is relatively small as both the administrative and priority segments of the claim would be paid in full and the unsecured portion of the claim would be substantially paid under Malden Mills' confirmed plan of reorganization. With these considerations in mind, including the novelty of the issues involved, the Court is prepared to approve the parties' stipulation if the severance pay exception is found inapplicable. *See infra.*

**4.** In response to the Court's request for briefs on the issue, *inter alia*, of the extent to which the Maine severance pay statute creates a claim that is "cognizable in bankruptcy", Malden Mills has not argued that the statute's application would be violative of the Supremacy Clause. *See Aegean Fare, Inc. v. Boston Licensing Board*, 35 B.R. 923 (Bankr.D.Mass.1983) (operation of state law requiring the payment of all outstanding taxes as a condition precedent to license renewal suspended in reorganization proceeding). While not necessary for this decision, it would seem that recognition of this state statutory right in a reorganization proceeding would be mandated by 28 U.S.C. § 959(b) and be supported by the long-standing cases which hold that "[c]ourt supervision of corporate reorganization affords

would invalidate and/or suspend the operation of this statute as to a Chapter 11 debtor. Accordingly, state law governs the interpretation of the limits of this severance pay statute.

The term "adjudicated bankruptcy" first appeared in Maine severance pay legislation in 1975 when 26 M.R.S.A. § 625–A became law. 26 M.R.S.A. § 625–A is the immediate predecessor to the current severance pay statute, 26 M.R.S.A. § 625–B. The current statute, which became effective on March 28, 1980, largely restates its predecessor with only minor changes. "Adjudicated bankruptcy" was included within the definition of "physical calamity" as one of the exceptions to severance pay liability under the former law, 26 M.R.S.A. § 625–A(5). There is no substantive legislative history concerning the 1975 law or the 1980 amendment, nor has any court spoken as to the meaning of "adjudicated bankruptcy" within the Maine severance pay statute.[5] Since this is a matter involving the virgin interpretation of a state statute, the Court is bound to follow and apply the rules of statutory construction prevailing in the state in which the statute was enacted. Sutherland, Statutory Construction § 37.05 at 89 (4th ed. 1973); *apparently contra, Somers v. Commercial Finance Corp.,* 245 Mass. 286, 139 N.E. 837 (1923).

A cardinal rule of statutory construction is that if a term used in a statute has a recognized legal meaning, it is presumed that the legislature attached that meaning to the term in the statute. *Sweeney v. Dahl,* 140 Me. 133, 34 A.2d 673 (1943); *see also Hurricane Island Outward Bound v. Vinalhaven,* 372 A.2d 1043 (Me.1977); *State v. Vogl,* 149 Me. 99, 99 A.2d 66 (1953). *But see Pride's Corner v. West-*

*brook Board,* 398 A.2d 415 (Me.1979) (a word should be construed according to its usage as a legal term of art only when it appears that the legislature intended such a construction). The legal meaning of the term "adjudicated bankruptcy" is contained in the former Bankruptcy Act.

"Adjudicated bankruptcy" was not specifically defined under the Act, however, "adjudication" meant "a determination, whether by decree or by operation of law, that a person is a bankrupt; . . ." Section 1(2) (formerly 11 U.S.C. § 1(2)). The term "bankrupt" was defined to "include a person against whom an involuntary petition or an application to revoke a discharge has been filed, or who has filed a voluntary petition, or who has been adjudged a bankrupt. . . ." Section 1(4) (formerly 11 U.S.C. § 1(4)). Section 18f (formerly 11 U.S.C. § 41f) provided that "[t]he filing of a voluntary petition under Chapters I to VII of this Act, . . . shall operate as an adjudication with the same force and effect as a decree of adjudication." Pub.L. 86–64, 73 Stat. 109 (1959) amended former Section 18g and renumbered it Section 18f so that the filing of a voluntary petition in ordinary bankruptcy would itself operate as an adjudication. Prior to the amendment, the law required the district judge to hear all voluntary petitions and to make the adjudication or dismiss the petition. Clearly the, the filing of a 'straight' bankruptcy petition under the former Bankruptcy Act constituted an "adjudicated bankruptcy" within the meaning of the Maine statute.

Whether the term "adjudicated bankruptcy" applied to the reorganization and arrangement chapters of the Act is somewhat less clear. In bankruptcy parlance, entities

---

the operating possessor no freedom from its statutory duty to its employees." *National Labor Relations Board v. Baldwin Locomotive Works,* 128 F.2d 39 (3d Cir.1942); *Plourde v. Massachusetts Realty Co.,* 47 F.Supp. 668 (D.Mass.1944).

**5.** *Shapiro Bros. Shoe Co., Inc. v. Lewiston—Auburn S.P.A.,* 320 A.2d 247 (Me.1974), deals with the 1971 version of the Maine severance pay statute which only required that a covered employer give one month's notice before *voluntari-*

*ly* going out of business or, should such notice not be given, to pay certain prescribed severance pay benefits. Upon a challenge to the 1971 statute, the Maine Supreme Judicial Court held the statute in question was not void for vagueness, did not discriminate against employers who voluntarily ceased business, did not constitute a taking of property without compensation, and did not discriminate against employers having 100 or more employees.

which filed proceedings under Chapter X, XI and XII of the Act were not considered to have been adjudicated bankrupt, it was only when their reorganization efforts failed and the bankruptcy court ordered that straight bankruptcy be instituted that they were considered to have been adjudicated bankrupts. *See, e.g.,* 6 *Collier on Bankruptcy,* ¶ 1.12, at 229 (14th ed. 1978) ("A petition for relief under Chapter X does not seek an adjudication, but instead contemplates the preparation, acceptance and confirmation of a plan of reorganization. An actual adjudication can come about only when efforts at reorganization have failed, the case is to be terminated and bankruptcy ordered proceeded with."). However, an argument might be made, based upon certain technical provisions of the Act (which are intended to incorporate various dates and provisions of Chapters I to VII into Chapters X, XI and XII), that even in Chapters X, XI and XII there was an "adjudicated bankruptcy." *See* Sections 102, 302 and 402 (formerly 11 U.S.C. §§ 502, 702 and 802) (for the purpose of incorporating these straight bankruptcy provisions into the reorganization and arrangement chapters, "the date of adjudication shall be taken to be the date of the filing of the petition [under Chapters XI and XII]" or "the date of the approval of a petition [under Chapter X]"). While the "date of adjudication" is not exactly the same as an "adjudicated bankruptcy", *see e.g.,* 8 *Collier on Bankruptcy,* ¶ 1.05 at 13 (14th ed. 1978) ("[r]eferences to adjudication in Chapters I to VII should be carefully viewed to determine whether they refer to the date of adjudication or to an actual adjudication. The provisions of § 302 [Chapter XI] under consideration refers only to former references, not to the latter."), the matter is not entirely free from doubt.

In any event, even if it could be said with certainty that only straight bankruptcy proceedings under the Act constituted a "physical calamity" under the Maine statute, there is no indication that the Maine legislature intended to maintain this distinction between liquidation and reorganization proceedings under the new Bankruptcy Code. For example, the Maine legislature's use of Act terminology in the 1980 amendment to the Maine statute (when the 1979 Bankruptcy Code was in effect and the Act had been repealed) might well indicate its intention not to exempt any Code bankruptcy proceedings from the operation of the statute. Alternatively, it might be argued that the Maine legislature was unaware of the Code's abrogation of the terms "adjudicated" and "bankrupt" and that it intended to maintain a distinction between liquidations and reorganizations under the Code. Finally, it might be argued, as Malden Mills does, that the Maine legislature intended to equate the term "adjudicated bankruptcy" with the entry of an "order for relief" under the Code and thus exempt all Code debtors from the operation of the statute. *See* H.Rep. No. 95–595, 95th Cong., 1st Sess. 321 (1977) and S.Rep. No. 95–989, 95th Cong., 2nd Sess. 31 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. ("Section 301 [11 U.S.C. § 301] specifies the manner in which a voluntary bankruptcy case is commenced.... The filing of the petition constitutes an order for relief in the case under that chapter. The section contains no chance [sic] from current law except for the use of the phrase "order for relief" instead of "adjudication." The term adjudication is replaced by a less perjorative phrase in light of the clear power of Congress to permit voluntary bankruptcy without the necessity for an adjudication, as under the 1898 act, which was adopted when voluntary bankruptcy was a concept not thoroughly tested.").

Thus, in this declaratory judgment action, the Court is asked to ascertain whether the Maine legislature intended the "adjudicated bankruptcy" exception to apply to Chapter 11 cases commenced under the Code. In this situation, I believe the wisest course is to certify this issue to the Maine court for decision, pursuant to M.R.S.A. tit. 4 § 57 and Maine Rule of Civil Procedure

76B.[6] *See Hiram Ricker & Sons v. Students Inter. Meditation Society,* 501 F.2d 550 (1st Cir.1974); *Pierce v. Secretary of U.S. Dept. of H.E.W.,* 302 F.Supp. 508 (D.Me. 508 1969); *In re Richards,* 253 F.Supp. 913 (D.Me.1966); *see also* 6A. J. Moore, Moore's Federal Practice ¶ 57.18[3] at 57–192 (2d ed. 1982) (in declaratory judgment actions, policy against federal court's original interpretation of state statute). The reasons underlying this deference to State courts have been oft expressed:

> [A]part from a most fundamental principle of "our federalism"—that the state court of last resort is alone the supreme arbiter of the substantive content of the law of the State—a concern to promote federal-state comity would counsel that, wherever reasonably possible, the state court of last resort should be given opportunity to decide state law issues on which there are no state precedents which are controlling or clearly indicative of the development course of the state law. Such approach would (1) tend to avoid the uncertainty and inconsistency in the exposition of state law caused when federal courts render decisions of State law which have an interim effectiveness until the issues are finally settled by the state court of last resort; and (2) minimize the potential for state-federal tensions arising from actual, or fancied, federal Court efforts to influence the development of State law.

> Since certification is an instrumentality which achieves these objectives while simultaneously avoiding the disadvantages produced by federal abstention (as a practice calculated to attain similar goals), in the situation in which a decision of a question of State law is necessary to a decision of the federal merits of a

cause pending in the federal Court, it is, and will continue; a strong policy of this Court [the Supreme Judicial Court of Maine] ... to implement the certification process.... *White v. Edgar,* 320 A.2d 668, 675–76 (Me.1974) (footnotes omitted).

Accordingly, the Court proposes that the following two questions be certified to the Supreme Judicial Court of the State of Maine:

(1) Whether the filing of a Chapter 11 petition under the Bankruptcy Code or the confirmation of a Chapter 11 Plan of Reorganization (11 U.S.C. § 1129) is an "adjudicated bankruptcy" within the meaning of 26 M.R.S.A. § 625–B?

(2) If the answer to either of the above questions is in the affirmative, is an adjudicated bankrupt's exemption from severance pay liability dependent upon whether the facts of a particular case "necessitated" the plant's closure and/or relocation?

In light of the Maine Certification Statute that appears to contemplate certification only by a "court of appeals or district court", and in view of the uncertain nature of bankruptcy courts' jurisdiction, *Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); *see In re South Portland Shipyard and Maine Railways Corp.,* 31 B.R. 770, 10 B.C.D. 1012 (Bankr.D.Me.1983), *aff'd,* 32 B.R. 1012, 10 B.C.D. 1385 (D.Me. 1983); *In re Romeo J. Roy,* 32 B.R. 240, 10 B.C.D. 1253 (Bankr.D.Me.1983), *aff'd,* 32 B.R. 1008, 10 B.C.D. 1392 (D.Me.1983), the Court's Proposed Certificate will be submitted to a United States District Judge for the District of Massachusetts for consider-

---

**6.** The Maine Certification Statute, M.R.S.A. tit. 4 § 57, provides:

> .    .    .    .    .
>
> When it shall appear to the Supreme Court of the United States, or to any court of appeals or district court of the United States, that there are involved in any proceeding before it one or more questions of law of this State, which may be determinative of the cause, and there are no clear controlling

precedents in the decisions of the Supreme Judicial Court, such federal court may certify any such questions of law of this State to the Supreme Judicial Court for instructions concerning such questions of state law, which certificate the Supreme Judicial Court sitting as a law court may, by written opinion, answer.

Rule 76B implements the statute.

ation pursuant to *Emergency Resolution* (e)(2)(A)(ii) and (iii).