**In the Matter of DART & BOGUE COMPANY, INC., Debtor.**

**DART & BOGUE COMPANY, INC., Plaintiff,**

v.

**Milton O. SLOSBERG, d/b/a Slosberg Enterprises, Defendant.**

**Bankruptcy No. 2–84–00858. Adv. No. 2–84–0358.**

United States Bankruptcy Court, D. Connecticut.

Aug. 8, 1985.

Penelope I. Bellamy, Wiggin & Dana, New Haven, Conn., for plaintiff.

Joseph B. Collins, and Joseph H. Reinhardt, Hendel, Collins & Stocks, P.C., Springfield, Mass., for defendant.

David S. Pickett, Francis, Kroopnick, O'Neil & DelPiano, Hartford, Conn., for Creditors' Committee.

## MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

Dart & Bogue Company, Inc., the debtor-in-possession in this chapter 11 case, exercising its rights under § 544 of the Bankruptcy Code,[1] the strong-arm clause, seeks a court determination that prepetition mortgage deeds executed by the debtor in favor of the defendant are invalid under state law. The debtor filed a statement of facts not in dispute and has moved for summary judgment, contending it is entitled to judgment as a matter of law.[2] The defendant has not filed a statement of material facts as to which he contends a genuine issue of fact exists to be tried, and concurs that the matter is ripe for a ruling on the debtor's motion.

### II.

To secure a debt of $1,450,000.00, the debtor executed an initial mortgage deed in favor of the defendant on November 13, 1980. The mortgage deed was recorded on November 17, 1980 on the Land Records of the Town of Waterford, Connecticut. On March 11, 1981, the debtor executed a correcting mortgage deed whose stated purpose was to add a second tract of land inadvertently omitted from the original mortgage deed. The correcting mortgage deed was recorded on March 13, 1981. The invalidity issue raised by the debtor applies equally to both mortgage deeds, and they will hereinafter be jointly referred to as "the mortgages."

The mortgages set forth the name of the mortgage grantee as: "Milton O. Slosberg, Managing Partner of Dart & Bogue Company, a Connecticut partnership doing busi-

---

1. Section 544 states as follows:

   § 544. *Trustee as lien creditor and as successor to certain creditors and purchasers*
   (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
   (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
   (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
   (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
   (b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

2. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

ness in the Town of Waterford, County of New London, and State of Connecticut." The obligation for which the mortgages were delivered is described in the mortgages in the following manner:

THE CONDITION OF THIS DEED is such that whereas the Grantor is justly indebted to the Grantee in the amount of ONE MILLION FOUR HUNDRED FIFTY THOUSAND DOLLARS ($1,450,-000.00) by virtue of its promissory note of even date with this instrument, by which note, for value received, the Grantor promises to pay to the order of the Grantee said sum with interest at the rate of ten (10) percent per annum from the date of said note, payable upon the unpaid principal balance until fully paid.

The promissory note was not recorded with the mortgages. The name of a law firm "Bergman, Horowitz, Reynolds, DeSarbo & Mauceri, P.C.", appeared at the bottom of eleven pages of the initial mortgage.

### III.

Conn.Gen.Stat. § 49–31b(a), originally enacted in 1976, reads as follows:

A mortgage deed given to secure payment of a promissory note, which furnishes information from which there can be determined the date, principal amount and maximum term of a note, shall be deemed to give sufficient notice of the nature and amount of the obligation to constitute a valid lien securing payment of all sums owed under the terms of such note.

The debtor contends that the mortgages held by the defendant do not constitute valid liens because they neither state the maximum term of the promissory note for which the mortgages are security nor give information from which the maximum term may be determined. The defendant concedes that the mortgages do not specifically state a maximum term of the promissory note, but claims that each mortgage "furnishes information from which there can be determined" the maximum term. The "information", to which the defendant refers,

is the name and address of the mortgagee, i.e., Milton Slosberg of the Town of Waterford, New London County, Connecticut, and the name of a law firm, Bergman, Horowitz, Reynolds, DeSarbo & Mauceri, P.C. The defendant's position is that the mortgage deeds are sufficient because an individual exercising ordinary diligence has the ability to locate either Slosberg or the law firm and inquire as to the maximum term of the note. The defendant emphasizes that except for the debtor's claim of noncompliance with § 49–31b(a), the debtor does not suggest that Slosberg is asserting a false or fictitious claim.

### IV.

Since this is a matter which concerns the effect of a Connecticut statute on the validity of mortgage deeds, the court must apply precedent, if any, established by the Supreme Court of Connecticut. *See Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.") The parties have not cited any supreme court case construing § 49–31b(a), and I have not located any. Instead, each party in support of his position has brought to my attention a number of Connecticut lower court opinions, none of which has been officially reported. All but one of these rulings have been partially or fully printed in the Connecticut Law Tribune. The defendant relies upon the opinions in *Calcagno v. Picard*, No. 165407 (Conn.Sup.Ct. October 16, 1979) (DeVita, J.), 6 Conn.L.Trib. No. 4, 18; *Calcagno v. Picard*, No. 165407 (Conn.Sup.Ct. Sept. 26, 1980) (Satter, J.), 6 Conn.L.Trib. No. 51, 14; *Resnick v. Berkowitz*, No. CV 800022436 S (Conn.Sup.Ct. Oct. 4, 1982) (Loiselle, State Referee); *In re Roberts*, Case No. 2–81–00752, Adv.P. No. 2–81–0676 (Bankr.Ct. Apr. 12, 1982) 8 Conn.L.Trib. No. 37, 7. The debtor cites *Roisman & Rosenberg, P.C. v. N.M.I., Inc.*, No. 282051 (Conn.Sup.Ct. Sept. 12, 1983)

(Borden, J.), 10 Conn.L.Trib. No. 2, 17 to uphold its contentions.

### A.

The first ruling in *Calcagno v. Picard*, issued on October 16, 1979, resulted from a defendant's motion to strike the plaintiff's complaint in a mortgage foreclosure action. The defendant alleged the mortgage deed violated § 49–31b(a) in that no maximum term of the note was contained in the mortgage deed. The court examined the promissory note and concluded that the note was payable on demand. The court denied the motion to strike, ruled that the mortgage deed was in compliance with § 49–31b(a), and stated: "The deed makes clear that a mortgage note is involved and an examination of the note provides all of the information."

The second ruling in *Calcagno* was rendered after a trial before Judge Robert Satter. He found that the promissory note, although reciting that it was payable on demand, in fact was for an indefinite term. He then stated:

In this case, by the mortgage deed not reciting a term, a later encumbrancer could properly assume that the subject note was due on demand. That is the worse [sic] situation from the point of view of subsequent lienors because such a demand note is most vulnerable to default. If, in fact, the note was payable at a given amount or from a given source, the encumbrancer is not thereby prejudiced or injured.

This court has carefully examined all the Connecticut cases on the requirement that a mortgage deed state the real nature of the transaction, and has found none in which a mortgage was declared invalid because the term of the mortgage note was either not disclosed or misstated. A perusal of the general common law similarly does not reveal that is a basis for invalidating a mortgage.

Judge Satter went on to conclude, in his ruling dated September 26, 1980, that for the purpose of complying with § 49–31b(a), a mortgage deed is valid if it provided "the address of the mortgagee, [and] gave them [the subsequent lienholders] the opportunity to make reasonable inquiry of any information not contained in the mortgage deed. Equity thus requires that the mortgage deed be declared valid."

The *Resnick* and *Roberts* ruling cited by the defendant are both inapposite. *Resnick* involved a mortgage deed which was executed and recorded prior to the effective date of § 49–31b(a), and the statute was therefore not in issue. All comments in *Resnick* concerning the effect of § 49–31b(a) are dicta. In *Roberts*, a ruling by this court, the alleged defect in the mortgage deed was not the omission of the maximum term of the secured promissory note. *Roberts* was concerned with whether the right to renew a note after maturity, as disclosed in the mortgage deed, rendered the mortgage deed invalid.

### B.

On the other hand, in *Roisman & Rosenberg, P.C. v. N.M.I., Inc.*, Judge David Borden, on a motion for summary judgment, construed the effect of § 49–31b(a) on a first mortgage deed which disclosed the date and principal amount of the note, but made no reference to its maximum term. The mortgage deed gave the name of the town where the mortgagees resided, and the mortgagees relied upon Judge Satter's opinion in *Calcagno* to uphold the validity of their mortgage. Judge Borden responded as follows:

In *Calcagno* the Superior Court held that disclosure of the name and address of the mortgagee in the mortgage deed was sufficient information under General Statutes § 49–31b(a) from which the maximum term of the note could be determined because the subsequent lienor could have contacted the prior mortgagee and obtained the information from him. This court disagrees. While such a legislative policy is certainly rational, may even be preferable and, indeed, underlies the notice filing requirement of secured transactions under the Uniform Commercial Code; see General Statutes

§ 42a–9–402 and the Comment thereto; this court sees nothing in General Statutes § 49–31b(a) to justify such a reading of it. To so hold would mean that so long as a mortgage deed disclosed only the name and whereabouts of the mortgagee, it would comply with the statute; for in all cases that would be sufficient to set a subsequent lienor on the track of obtaining the date, principal amount and maximum term of the note. General Statutes § 49–31b(a) does not embody such a radical departure from prior real estate mortgage law. *See, e.g., Sadd v. Heim,* supra. [143 Conn. 582, 124 A.2d 522 (1956) ]. Nor is there anything in the relevant legislative history of the statute which the court has examined; see 19 H.R.Proc., Pt. 5, 1976 Sess., pp. 2096–97; which supports such a reading.

He accordingly granted the plaintiff's motion for summary judgment which had the result of giving priority to the plaintiff's second mortgage over the first mortgage found defective.

## V.

Both Judge Satter and Judge Borden are experienced and highly-regarded members of the Connecticut bench. From their divergent rulings, it is clear that an unsettled issue of state law is involved in the matter before this court. The consequences on the parties of a ruling is considerable, as the unpaid balance of the Slosberg promissory note is approximately one million dollars. The property has been sold, and the mortgage liens have been transferred to the proceeds. The debtor is no longer operating its business. At oral argument on the motion for summary judgment, I raised the possibility of utilizing the Uniform Certification of Questions of Law Act, which became part of Connecticut statutory law on May 8, 1985. *See, e.g., In re Malden Mills,* 45 B.R. 408 (Bankr.D.Mass.1984) (discussing Maine's certification statute). The effective date of that act, however, is October 1, 1985, and the debtor has requested that the bankruptcy court not delay its ruling. The defendant has not moved for abstention. In view of the sig-

nificant sum of money involved here, it is obvious to me that any ruling I make will be the subject of an appeal, at least to the district court, and probably to the court of appeals. In either of those courts, the provisions of the Uniform Certification of Questions of Law Act would be available, and, almost certainly, utilized. That act, in pertinent part, provides:

Section 1. The supreme court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States or a United States District Court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

Sec. 2. This act may be invoked by an order of any of the courts referred to in section 1 of this act upon the court's own motion or upon the motion of any party to the cause.

. . . .

There are good reasons for having a federal court defer to a state court for a controlling construction of § 49–31b(a). Congress, in enacting the Bankruptcy Amendments and Federal Judgeship Act of 1984 provided, in 28 U.S.C. § 1334(c)(1), for federal court abstention on broad terms in matters of state law as follows:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Section 1334(c)(1) authorizes the court to act in the absence of a motion by a party in interest.

This congressional act, in part at least, appears to reflect the holding of the Supreme Court in *Thompson v. Magnolia*

*Petroleum Co.,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940). In that matter, the Supreme Court directed that a bankruptcy trustee be ordered to institute proceedings in Illinois state courts to determine an unsettled question of state law controlling the ownership of land. The Court ruled:

> Unless the matter is referred to the State courts, upon subsequent decision by the Supreme Court of Illinois it may appear that rights in local property of parties to this proceeding have—by the accident of Federal jurisdiction—been determined contrary to the law of the State which in such matters is supreme.

*Id.* at 484, 60 S.Ct. at 631. "Indeed, *Thompson v. Magnolia Petroleum Company* may have greater validity today than under the 1898 Bankruptcy Act, since Congress has told the district courts that they may abstain 'in the interest of comity with State courts or respect for State law,' in addition to considering the interest of justice." 1 *Collier on Bankruptcy* ¶ 3.01 at 3–44 (15th ed. 1985).

The thrust of rulings by the Court of Appeals of the Second Circuit since *Thompson v. Magnolia Petroleum Company* is to expand, not restrict, its application. In *First National Bank of White River Junction v. Reed,* 306 F.2d 481 (2d Cir.1962), the court of appeals, *sua sponte,* remanded a proceeding to the district court with instructions to direct a bankruptcy receiver to institute appropriate proceedings in the Vermont courts. The factual background in *First National Bank of White River Junction* is comparable to the facts here. Mortgage deeds were attacked by a bankruptcy receiver in the bankruptcy court as being invalid because the mortgage deeds did not comply with a Vermont statute requiring approval of the mortgages by the Vermont Public Service Commission. The bankruptcy court sustained the validity of the mortgages. The district court reversed the bankruptcy court and determined that the mortgages were void. The parties agreed that the state statute had never been construed by the Supreme Court of Vermont. Opinions from other states with comparable statutes were conflicting. The court of appeals in that situation said:

> Where does all this leave us? The only candid answer is that it leaves us with no real idea whether the Supreme Court of Vermont would hold the mortgages void or would say at most that although, in the absence of Commission approval, they cannot be enforced as such, parties who have acted in good faith will still be protected against subsequent lienors or other creditors in the event of insolvency, at least in the absence of a showing that detriment was caused.

*Id.* at 487. Although the premises had been sold and the liens of the mortgage transferred to the proceeds, as in the present proceeding, the court of appeals held that was no reason not to follow *Thompson v. Magnolia Petroleum Co.,* and vacated the district court judgment. *Cf., Smith v. Metropolitan Property and Liability Insurance Co.,* 629 F.2d 757, 760 (2d Cir.1980) ("This court has adopted a broad view of abstention"); *Naylor v. Case and McGrath, Inc.,* 585 F.2d 557, 563 (2d Cir.1978) ("Abstention may be raised by the court *sua sponte* "); *Marina Management Corp. v. Brewer,* 572 F.2d 43, 46 (2d Cir. 1978) (Court may decide Connecticut state law question where state courts have not yet ruled and if no procedure exists to certify question to state courts, and determination of Connecticut law not sufficiently difficult to warrant remitting the parties to those courts) *cert. denied,* 439 U.S. 829, 99 S.Ct. 104, 58 L.Ed.2d 123 (1978); *Brown v. First National City Bank,* 503 F.2d 114, 117 (2d Cir.1974) ("Since the federal statute [National Bank Act] had no independent operation and only state law questions were presented, the district court could, and probably should, have postponed its decision until Brown's claim was presented to and adjudicated by the courts of New York").

In view of the foregoing, I am left with the firm conviction that the unsettled Connecticut law which controls the resolution of the issue in this proceeding should be resolved by the Connecticut courts. Vari-

ous routes to accomplish this may be available, and as the parties may wish to be heard on which way to go, I will direct the clerk to schedule a further hearing in this matter prior to entering a judgment. It is

SO ORDERED.