[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Midwest Financial Acceptance Corp., brings this action to foreclose two mortgages. The defendants are Thames Mews Associates (Thames), a Connecticut partnership, and its general partners Michael A. Rakosky, Narcy Dubicki and Saul A. Sadinsky.[1]
The appearing parties have stipulated to the following facts. By a promissory note dated May 3, 1994, Thames agreed to pay to the Resolution Trust Corporation (Resolution) the principal sum of $240,000 plus interest thereon and any costs, including reasonable attorneys' fees, incurred in connection with collection of any payment due under the note. As security for the loan, Thames, by a mortgage, assignment of rents and security agreement dated May 3, 1994 (the first mortgage), mortgaged to Resolution certain property located at 2 Union Street and 4, 6, and 12 Union Court in New London. By a demand note, also dated May 3, 1994, Thames agreed to pay to Resolution the principal sum of $168,000 together with any costs, including reasonable attorneys' fees, incurred in connection with collection of any payment due thereunder. The demand note was secured by an additional mortgage (the second mortgage) on the same property. The two mortgages were recorded in the New London Land Records on May 4, 1994. The plaintiff is the assignee and current holder of the notes and mortgages. Rakosky, Dubicki and Sadinsky, d/b/a Thames Mews Associates, are the record owners of the subject properties.
The parties agree that judgment of strict foreclosure may enter without a finding of the fair market value of the properties and that the fair market value will be established at a future deficiency hearing. The parties also stipulate that the law day for the owner of the equity redemption shall be the first Monday after twenty-one days after the court's judgment is entered. CT Page 3409
The defendants filed an answer and three special defenses. In the first special defense the defendants allege that no sums are due under the demand note and that the defendant is not in default on that note. In the second special defense the defendants allege that the plaintiff accelerated the promissory note at a time when there was no default and thereby made performance of the note impossible. In the third special defense the defendants allege that the plaintiff acted in bad faith in declaring a default due to alleged property tax arrears, when the mortgage documents contemplated a long-term work-out with respect to payment of back taxes and when the defendants were making payments to the City of New London in accordance with an agreed payment with the City.
On October 20, 2000, six days before trial, the defendants filed an additional special defense alleging that "[t]he Plaintiff has unduly delayed the initiation of this action for a period of time in excess of three (3) years, which delay has prejudiced the Defendants and, based on laches, the Plaintiff is not entitled to interest during the period of delay." The plaintiff objected to the filing of the additional special defense, arguing that the filing was unreasonably late and would delay the trial and cause prejudice to the plaintiff. The court treated the document filed by the defendants as a request to file an additional special defense and denied the request on October 26, 2000.
As a preliminary matter the court notes that the three special defenses filed on January 24, 2000 all address the issue of whether the loans are actually in default. Because in the stipulation filed with the court at trial the defendants have consented to a judgment of strict foreclosure, the court considers these defenses abandoned.
At trial, however, the defendants raised as a new defense that they are entitled to a credit for interest accruing on the promissory note prior to July 16, 1999, when the plaintiff acquired the notes and mortgages. Specifically, the defendants argue that the FDIC, when acting as receiver of the plaintiff's predecessor in interest, breached the implied covenant of good faith and fair dealing.
In support of this claim the defendants rely on the testimony of defendant Dubicki, who testified as follows. In an effort to resolve the problems with the mortgage, Dubicki contacted Midland Loan Services, the company servicing the loan for the FDIC, regarding the possibility of taking a deed in lieu of foreclosure. After making several follow-up calls, he learned that Midland was no longer the servicing agent for the FDIC. Through repeated efforts over a one year period he finally located the office of the FDIC which was handling the matter. He subsequently arranged a meeting with an FDIC official, but received no response after CT Page 3410 the meeting. Dubicki made repeated calls to the FDIC and was finally told that the loan was being sold. The next communication regarding the matter came from the present plaintiff.
The plaintiff argues that the court may not consider the defendants' claim of breach of the implied covenant of good faith and fair dealing because the issue was not properly raised in the pleadings. According to the plaintiff, the defendants' claim constitutes a special defense that was waived by the defendants' failure to affirmatively plead it. The defendants argue, on the other hand, that the issue can properly be raised by way of a denial in its answer.
"No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statement but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged." Practice Book § 10-50. "The fundamental purpose of a special defense, like other pleadings, is to apprise the court and opposing counsel of the issues to be tried, so that basic issues are not concealed until the trial is underway. . . . Whether facts must be specially pleaded depends on the nature of those facts in relation to the contested issues." (Citations omitted.) Bennett v. Automobile Ins. Co. ofHartford, 230 Conn. 795, 802 (1994).
Because a disagreement over the proper computation of the debt in a foreclosure action does not show that the plaintiff has no cause of action, it generally does not have to be pleaded as a special defense. See, e.g., Ocwen Federal Bank, FSB v. Stawski, Superior Court, judicial district of New London at New London, Docket No. 552683 (April 25, 2000,Martin, J.); Federal Deposit Insurance Corp. v. Brunetti, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 294979 (March 31, 1993, Fuller, J.) ("Proper calculation of the mortgage debt must occur in any case, and does not require a special defense."). In the present case, however, the defendants argue that the breach of the implied covenant of good faith and fair dealing by the FDIC should excuse the defendants from paying any interest that accrued prior to July 16, 1999. The defendants are not, therefore, attacking the mathematical calculation of the interest, but are contesting their liability for the interest.
The distinction between defenses relating to mathematical calculations and defenses going to the defendants' liability was established by the Appellate Court in Suffield Bank v. Berman, 25 Conn. App. 369, cert. dismissed, 220 Conn. 913, cert. denied, 220 Conn. 914 (1991). In that case, the plaintiff filed a demand for disclosure of defense pursuant to Practice Book § 236 (now § 13-19). After all of the defendants had been defaulted for failure to disclose a defense, the plaintiff filed CT Page 3411 a motion for judgment of strict foreclosure. "Immediately before the hearing on the motion, the defendants indicated that they intended to object to the plaintiff's affidavit of debt claiming that their obligation to pay interest was discharged when the plaintiff refused to accept a conveyance of the property." Id., 371. The trial court refused to consider the evidence, basing its decision in part on the defendants' failure to disclose the defense. Id., 371-72.
The Appellate Court affirmed the trial court, stating that "defenses relating to the mathematical calculation of the debt need not be disclosed but defenses that go to the issue of the defendant's liability for the debt must be disclosed." Id., 374. Because the defense in the present case, like that in Suffield Bank, relates to the defendants' liability for interest, rather than the mathematical computation of the interest, the defendants were required to affirmatively plead it.
This conclusion is consistent with the principle, discussed above, that the court and plaintiff should be apprised "of the issues to, be tried, so that basic issues are not concealed until the trial is underway."Bennett v. Automobile Ins. Co. of Hartford, supra, 230 Conn. 802. The defendants claim that their defense is provable under their denial of paragraph 18 of the complaint, which states: "As a result of the continued default for nonpayment of principal and interest under the Notes, Midwest has exercised its option to declare the entire balance under the Notes and mortgages due and payable." The defendants' denial of the existence of a default and the subsequent acceleration of the debt cannot be said to apprise the plaintiff of a claim of bad faith and unfair dealing, especially one arising from post-default acts of the plaintiff. The court therefore may not consider the defendants' claim of breach of the implied covenant of good faith and fair dealing unless the defendants have filed a special defense raising the issue.
The defendants further argue that their third special defense is sufficient to raise the issue of bad faith. The third special defense states:
 "The Plaintiff acted in bad faith in declaring a default due to alleged property tax arrears, when the mortgage documents contemplated a long-term work-out with respect to payment of back taxes, and these Defendants were making payments to the City of New London in accordance with an agreed payment with the City."
Although the third special defense contains the words "bad faith," it clearly addresses the alleged bad faith of the plaintiff (or its CT Page 3412 predecessor in interest) in declaring a default. The essence of the defendants' present claim, however, is that the plaintiff's predecessor in interest acted in bad faith after the defendants' default. "[O]ur rules of practice require fact pleading. See Practice Book § 10-1."Emerick v. Kuhn, 52 Conn. App. 724, 749 n. 18, cert. denied, 249 Conn. 929, cert. denied, 528 U.S. 1005, 120 S.Ct. 500, 145 L.Ed.2d 386 (1999). The defendants' third special defense does not set forth any of the facts by which the defendants now seek to prove breach of the implied covenant of good faith and fair dealing and is, therefore, insufficient to bring the issue before the court.
Similarly, the defendants argue that the issue of good faith and fair dealing by the FDIC was properly before the court by way of both the trial conference management report and the parties' stipulation. The trial conference management report reads in relevant part:
"2. ISSUES IN DISPUTE:
A. Amount of debt and whether interest was chargeable during certain periods of time.
B. Bad faith alleged on part of Plaintiff's predecessor causing default."
The first of these issues is too vague to indicate to the court that the plaintiff had notice of the specific nature of the defendants' defense. It does not provide any information as to what periods of time are at issue or why interest would not be chargeable. The second issue involves "[b]ad faith . . . causing default."[2] The defendants' present claim is not that the plaintiff's predecessor's bad faith caused the default, but that the plaintiff's predecessor acted in bad faith subsequent to default. Consequently, nothing in the trial management conference report is adequate to overcome the defendants' failure to plead their defense.
Paragraph 10 of the parties' stipulation provides: "The parties hereto reserve their rights to present testimonial and documentary evidence as to the accrual of interest, if any, due and owing under the Note." According to the defendants, this stipulation constitutes an admission by the plaintiff of the possibility that no interest had accrued. Even assuming arguendo that the stipulation does constitute such an admission, it does not follow that it would establish the defendants' right to prove a new defense based on facts that were never pleaded. As discussed above, the defendants in a foreclosure action have the right to contest the mathematical computation of the debt without filing a special defense. The court construes paragraph 10 of the parties' stipulation as referring to that right, rather than the right to raise a new, unpleaded CT Page 3413 defense.
For all of the reasons set forth above, the defendants are not entitled to a credit for interest that accrued prior to the plaintiff acquiring the notes and mortgages.
The court finds the amount of the debt on the promissory note secured by the first mortgage to be $374,928.58 as of October 26, 2000 plus $57.73 interest per diem thereafter. In addition, the amount of the debt owing on the demand note secured by the second mortgage is found to be $168,000.
When a plaintiff seeks to foreclose two mortgages on the same property, the proper procedure is for the trial court to "determine the full amount of the debts due. . . . on both notes and fix one law day for them to redeem upon paying that determined indebtedness. . . ." Sadd v.Heim, 143 Conn. 582, 589 (1956). The court therefore finds the total debt to be $542,928.58, plus $57.73 interest per diem from October 29, 2000 to the date of this decision. In addition, the plaintiff is awarded attorneys' fees in the amount of $10,000 plus costs of $1,602.64. A judgment of strict foreclosure is hereby entered, with the plaintiff's law day on the first Monday after the twenty-first day following the entry of this decision.
Hendel, J.