ANNIE M. SADD *v.* GEORGE HEIM, JR., ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued June 6—decided July 10, 1956

*Irwin I. Krug,* with whom was *Royal O. Woodward,* for the appellant (plaintiff).

*Albert S. Bill, Jr.,* for the appellees (defendants Moreira), with whom were *Milton L. Jacobson,* for the appellees (defendants Isselbacher et al.), and, on the brief, *Stanley J. Grudzinski,* for the appellee (defendant Obedzinski).

O'SULLIVAN, J. The defendants George Heim, Jr., and Helen Heim own a parcel of land in Lebanon upon which the plaintiff holds two mortgages. The validity of one of them, concededly a first mortgage, is not questioned in this litigation and we will make little further reference to it. The undisputed facts concerning the other mortgage are these: On September 5, 1952, the Heims, wishing to build a cowshed and needing money to carry out the idea, executed and delivered to the plaintiff their promissory demand note in the amount of $2500 and, to secure its payment, a mortgage upon the land mentioned above. The condition in the deed is set forth below.[1] On September 6, 1952, the mortgage was recorded on the Lebanon land records.

---

[1] "The condition of this deed is such, that whereas the said grantors are justly indebted to the said grantee in the sum of Two Thousand Five Hundred 00/100 Dollars as evidenced by their promissory note for Two Thousand Five Hundred 00/100 Dollars of even date herewith, payable to said grantee or order on demand at 6% interest payable semi-annually, Now Therefore, if said note shall be well and truly paid according to its tenor, then this deed shall be void, otherwise to be and remain in full force and effect."

When the note and the mortgage were delivered to the plaintiff, she gave the Heims $1250 in cash and her own negotiable promissory note in a like amount, payable to the order of the Heims ninety days after date, with interest at 6 per cent per annum. At that time the parties orally agreed, as a part of the transaction, that the plaintiff would pay the note, when due, only if the cowshed had then been built. The mortgage made no reference to this oral agreement. The Heims did not accept the note as cash, nor was it intended to be considered as such. This method of financing one-half of the loan was pursued by the parties to give the plaintiff assurance that the shed would be erected. It was, in fact, completely built before the note given by the plaintiff fell due, and on December 10, 1952, she gave the Heims $1269.95, representing full payment of her note with interest. In the meantime, on September 29, 1952, the Heims executed and delivered their promissory note for $2500 and, to secure it, a mortgage on the Lebanon property to the defendants Joseph L. and Maria C. Moreira. On April 21, 1953, the defendants Isselbacher and Strauss, and on March 10, 1954, the defendant Obedzinski, attached the land in question by virtue of writs in two actions brought against the Heims.

The case at bar was instituted by the plaintiff to foreclose her two mortgages. As has been previously indicated, the defendants did not challenge the first mortgage. They did, however, attack the other and the court supported their contention by holding that it was invalid as against them in their capacities as subsequent incumbrancers. It is with this phase of the court's decision that the plaintiff quarrels on her appeal.

The mortgage in question was one to secure future

advances. To be sure, the plaintiff turned over to the Heims her negotiable note for $1250 at the time of the execution of the mortgage. The note, however, was not the equivalent of cash, nor did the parties treat it as such. In this respect, the situation differed from that in *Beach* v. *Osborne,* 74 Conn. 405, 50 A. 1019. Doubtless the Heims could have negotiated the note and thus have converted it into cash. But, had this been done, they would have broken their agreement and been liable to the plaintiff, since payment of the note, as between the parties, was conditioned on the erection of the cowshed by December 10, 1952, an event which, we add, might never have occurred. When, then, on September 5, 1952, the Heims delivered the mortgage for $2500 to the plaintiff, they were, in fact, indebted to her only to the extent of $1250, the amount actually advanced in cash. It necessarily follows that the mortgage did not describe the indebtedness correctly.

It has always been our law that the title to real estate should appear upon record in order that it may be easily and accurately traced, thus preventing fraud and adding greatly to the security of land titles. *Pettibone* v. *Griswold,* 4 Conn. 158, 162. The real nature of the transaction must, so far as possible, be disclosed by the record with reasonable certainty. *Stoughton* v. *Pasco,* 5 Conn. 442, 446. The condition in a mortgage deed must be so drawn that, when spread upon the record, it will give reasonable notice of the nature and amount of the incumbrance which the mortgagor intends to place upon the land. *Bridgeport Land & Title Co.* v. *George Orlove Co.,* 91 Conn. 496, 497, 100 A. 30. This means that if a mortgage is given to secure an ascertained debt, the amount of the debt ought to be stated; if it is in-

tended to secure an unascertained debt, such data must be set out with respect to that debt as will put anyone interested in the inquiry upon a track leading to discovery; and if it is given to secure an existing or future liability, the foundation of that liability must be described. *Hart* v. *Chalker,* 14 Conn. 77, 79.

Among a large number of cases dealing with the phase of mortgage law which applies here is *Matz* v. *Arick,* 76 Conn. 388, 56 A. 630. That case raised the question of the validity of a mortgage in which the debt was described as $5000, as evidenced by a note for that amount payable, with interest, on or before six months after date. Of this sum, $600 represented a bonus which the mortgagor had agreed to pay for the loan and $400 was cash actually paid to him when the note and the mortgage were executed. The balance of the $5000 consisted of eight due bills in the aggregate amount of $4000, each expressed to be due when a certain stage in the erection of the building had been reached, and each was duly paid according to its tenor. We approved the action of the court in ruling that the mortgage, while valid for the full amount of $5000 as between the parties, held its place in priority as to subsequent liens only to the extent of $1000 and that, so far as the remaining $4000 of the debt was concerned, the mortgage was invalid and hence junior to subsequent liens. After first observing that the legal effect of obtaining $400 in cash and a receipt for payment of the $600 bonus was to make Arick the debtor of the lenders to the extent of $1000 as to all the world, we went on to say (p. 391): "As respects the balance of the $5,000, however, represented by this note, the terms of the mortgage were not such that the record of it would give notice to subsequent purchasers, with reason-

able certainty, of the nature and amount of the indebtedness which it purported to secure. The amount of the obligation was truly stated. The nature of the obligation was not truly stated. The mortgagor declares in his deed that it is given in consideration of $5,000 received to his full satisfaction, of the mortgagees, and that he is indebted to them in that sum. The due-bills, however, were not, by their terms, due immediately, and cannot be regarded as the equivalent of cash. Their payment was definitely and distinctly postponed and made dependent on future events, which might never occur, or not until after the maturity of the note. To hold executory contracts of that kind equivalent to cash, as against subsequent incumbrancers, would be opening the door to opportunities for fraud and concealment."

*Matz* v. *Arick,* supra, has been the subject of unfavorable comment by at least two authors well versed in the field of mortgage law. Hewitt, "The Rule in Matz v. Arick," 2 Conn. B.J. 237; Goldman, "Formation of Construction Loan Mortgage Deeds," 15 Conn. B.J. 240, 243. The case nonetheless remains expressive of the common law of the state. See *Andrews* v. *Connecticut Properties, Inc.,* 137 Conn. 170, 172, 75 A.2d 402. It controls the disposition of this appeal. Here, the condition in the mortgage deed recited an existing debt of $2500 when, in fact, it was only half that amount and might, indeed, never become larger. The mortgage deed executed by the Heims must be regarded as one which failed to state, or even to intimate, the true nature of the transaction.

No fraud is claimed, nor is any apparent. Because of the absence of fraud, the mortgage serves as security for $1250, representing the cash actually turned over to the mortgagor when the instrument

was executed. *Matz* v. *Arick,* supra, 391. As to that amount, the mortgage is valid against subsequent incumbrances, and the court erred in ruling to the contrary. The court was correct, however, in holding that the mortgage lost its priority as to the remaining half of the stated debt.

All of the defendants exclusive of the Heims assert that their liens should have complete priority over the mortgage and should not be subordinate to it to the extent of the amount of the actual cash advanced when the mortgage was executed. Their contention is that, while *Matz* v. *Arick* may express the common law of Connecticut, the General Assembly has, by legislative enactment, overridden the principles there enunciated with respect to the validity of mortgages for future advances. The enactment to which these defendants refer was passed in 1947; Sup. 1947, § 1350i; and amended in 1949. Cum. Sup. 1955, § 2970d. It is quoted in full in the footnote.[2]

---

[2] "Sec. 2970d. MORTGAGE SECURING FUTURE ADVANCEMENTS. Any mortgage to secure future advancements of money for construction or repair of buildings or improvements on land in this state shall be sufficiently definite and certain and valid to secure all money actually advanced under and in accordance with its provisions, up to but not exceeding the amount of the full loan therein authorized, with the same priority as if it had been advanced at the time said mortgage was delivered, if such mortgage shall contain a description of the loan in substantially the following form: 'Whereas buildings or improvements on said premises are in process of construction or repair, or to be erected or repaired; and whereas the said grantee has agreed to make the loan herein described to be paid over to said grantor in instalments as the work progresses, the time and amount of each advancement to be at the sole discretion and upon the estimate of said grantee, so that when all of the work on said premises shall have been completed to the satisfaction of said grantee, said grantee shall then pay over to said grantor any balance necessary to complete the full loan of $. . . . . . . . .; and whereas the grantor agrees to complete the erection or repair of said buildings to the satisfaction of said grantee within a reasonable time from the date hereof or at the

The statute has neither the meaning nor the effect which these defendants ascribe to it. The entire first sentence is but declaratory of the common law. The statute does not provide that a mortgage given to secure future advances shall be invalid unless it is drafted in conformity with the method outlined in the act. The concluding sentence of the statute clearly indicates that the General Assembly recognized that other methods might not result in invalidity. *Matz* v. *Arick* has not been annulled by the statute but still provides the test for determining the validity of all mortgages for future advances not framed in the form suggested by statute.

One other matter deserves comment. The trial court fixed separate law days for the Heims on each mortgage. This was unnecessary and, indeed, might lead to confusion. As previously noted, the plaintiff brought this action to foreclose two mortgages, the senior being an admittedly valid first mortgage securing a present debt of $3300 plus interest and certain costs mentioned in the note, and the junior being the contested mortgage of $2500. Upon remand, the court should determine the full amount of the debts due from the Heims on both notes and fix one law day for them to redeem upon paying that determined indebtedness, with costs of suit. The court should also fix law days for the other defendants, but the amount they will be required to pay in order to redeem will be the indebtedness of the Heims on the note secured by the first mortgage plus $1250, representing the cash turned over to the Heims by the plaintiff upon delivery of the $2500 note and mortgage, with interest on the $1250, costs

---

latest on or before . . . . . . months from this date.' Nothing herein shall invalidate any mortgage which would be valid without this section."

of suit and such other costs, if any, as are mentioned in the junior mortgage.

There is error, the judgment is set aside, and the case is remanded for the rendition of judgment in conformity with this opinion.

In this opinion the other judges concurred.