CONNECTICUT NATIONAL BANK *v.*
EDWARD J. ESPOSITO ET AL.
(13491)

HEALEY, CALLAHAN, GLASS, HULL and MENT, JS.

Argued December 9, 1988—decision released February 28, 1989

*Jackson T. King, Jr.,* with whom was *Mary E. Holzworth,* for the appellant (plaintiff).

*Clifford J. Grandjean,* for the appellee (defendant Tri-Continental Leasing Corporation).

ARTHUR H. HEALEY, J. The question in this case is whether a purported mortgage deed, recorded in the Plainfield land records, satisfies common law standards of validity. An attorney trial referee and the trial court found that the mortgage was valid under those standards. We agree.

In an action by the plaintiff Connecticut National Bank to foreclose its judgment lien, an attorney trial referee found the following facts. On May 4, 1984, the plaintiff obtained a judgment against the named defendant, Edward J. Esposito, in the Superior Court for the judicial district of Windham. On May 14, 1984, the plaintiff filed its judgment lien in the Plainfield and Killingly land records to secure the judgment.[1] The

---

[1] The judgment lien related back to the date of attachment, December 21, 1983, because the lien was recorded within four months from the entry of the judgment. See General Statutes § 52-380a (b).

plaintiff's lien applies to two parcels of real property in the town of Killingly and one in the town of Plainfield. As of the date of judgment, Esposito owed the plaintiff $150,345.03.[2]

The purported mortgage deed is from the defendant Esposito to the defendant Tri-Continental Leasing Corporation (Tri-Con), and it applies to a portion of the parcel located in Plainfield on which the plaintiff has a judgment lien. The mortgage is dated July 10, 1981, and was recorded on July 27, 1981, in the Plainfield land records and thus is prior in time to the plaintiff's judgment lien. The mortgage recites as consideration "advances made [by Tri-Con] for the benefit of Smithfield Glass, Inc. and to induce Mortgagee to enter into a Lease with said Smithfield Glass, Inc. . . . ." The stated purpose of the mortgage was "[t]o secure to Mortgagee on condition of the repayment of all monies due Mortgagee under the Lease aggregating and repayable in accordance with the terms of said Lease plus all advances made at the request of Smithfield Glass, Inc. pursuant to a Progress Payment Agreement. A copy of said Lease and Progress Payment Agreement is attached hereto and made a part hereof."[3] The copies of the lease and progress payment agreement, however, were not attached to the mortgage or otherwise recorded in the land records. The attorney trial referee further found from the mortgage deed that "the role of the mortgagor (defendant, Edward J. Esposito) [is] a guarantor of the obligation of Smithfield Glass."

The attorney trial referee found that the mortgage met the common law standards of validity. The referee

[2] It appears from the transcript that Connecticut National Bank sought foreclosure of its lien because there is insufficient alternative equity to satisfy the defendant's debt to it.

[3] Tri-Con and Smithfield Glass, Inc., had entered into a written equipment lease on June 23, 1981. Esposito guaranteed Smithfield Glass, Inc.'s obligation to Tri-Con under the lease by written agreement on July 18, 1981.

stated that the omissions from the recorded mortgage would not mislead a title searcher and that the mortgage provided "reasonable notice" of the nature and amount of the mortgage and, therefore, was valid under this court's holding in *Dart & Bogue Co.* v. *Slosberg*, 202 Conn. 566, 522 A.2d 763 (1987). The referee recommended a judgment of strict foreclosure against all defendants except Tri-Con.

On July 6, 1987, the plaintiff filed a motion to correct the report of the attorney trial referee, which the attorney trial referee denied. The plaintiff then filed a motion to correct, exception and objection to the report of the attorney trial referee on July 27, 1987. The Superior Court, *Noren, J.,* heard argument on this motion on February 9, 1988, and on March 11, 1988, issued a memorandum of decision accepting the attorney trial referee's report and rendered a judgment in accordance with that report. The plaintiff filed a timely appeal to the Appellate Court on March 30, 1988, and this court transferred the case to itself on September 12, 1988, pursuant to Practice Book § 4023.

As a threshold matter, we address an issue that has not been fully explored by the parties but is necessary for our determination of the requisite record notice to be afforded to third parties by a recorded instrument that purports to be a mortgage under the circumstances of this case. That issue is whether the obligation in this case is, indeed, a mortgage. While the debate has centered on whether the obligation is valid, it appears that the attorney trial referee and the trial court assumed that the obligation is a mortgage. The parties' dependence on *Dart & Bogue Co.* v. *Slosberg,* supra, a case involving a mortgage, throughout this litigation, is an indication that they also consider the obligation between Esposito and Tri-Con as a mortgage.

The purported mortgage deed that was recorded in the Plainfield land records states that the mortgagor, Esposito, "in consideration of advances made for the benefit of Smithfield Glass, Inc. and to induce the Mortgagee [Tri-Con] to enter into a Lease with said Smithfield Glass, Inc., grants and conveys to Mortgagee" a certain piece of property in Plainfield. Purportedly, the mortgage was given "[t]o secure to Mortgagee on condition of the repayment of all monies due mortgagee" under the lease that was referred to in the mortgage but was not recorded. The mortgage also states: "Upon payment and discharge of all sums secured by this Mortgage, this Mortgage shall become null and void and Lender shall release this Mortgage without charge to Mortgagor."

We now must apply these facts to the case law in Connecticut to determine whether the obligation in this case is a mortgage at common law. This court has declared that " '[t]he particular form of words of the conveyance is unimportant; and it may be laid down as a general rule, subject to few exceptions, that whenever a conveyance, assignment, or other instrument transferring an estate, is originally intended between the parties as a security for money or for any other incumbrance, whether this intention appear from the same instrument or any other, it is always considered in equity as a mortgage, and consequently is redeemable upon the performance of the conditions or stipulations thereof.' " *DeWolf* v. *Sprague Manufacturing Co.,* 49 Conn. 282, 319 (1881), quoting 2 J. Story, Equity Jurisprudence § 1018. "The condition of a mortgage may be the payment of a debt, the indemnity of a surety, or the doing or not doing any other act." *Cook* v. *Bartholomew,* 60 Conn. 24, 25, 22 A. 444 (1891); see *State* v. *Hurlburt,* 82 Conn. 232, 236, 72 A. 1079 (1909); *Jarvis* v. *Woodruff,* 22 Conn. 546, 550–51 (1853); *Gagan* v. *Leary,* 14 Conn. Sup. 468, 470 (1946); see also 9 G.

Thompson, Real Property (Grimes 1958) § 4659, p. 32. "In a title theory state such as Connecticut, a mortgage is a vested fee simple interest subject to complete defeasance by the timely payment of the mortgage debt." *Garrison* v. *Garrison,* 190 Conn. 173, 177, 460 A.2d 945 (1983).

Under these definitions, it appears that the obligation in this case does qualify as a mortgage at common law. The transaction involved the conveyance of an estate in Plainfield to secure the payment of money due under a lease. The condition of the mortgage is the payment of that money by either Smithfield Glass, Inc., the principal under the lease, or by Esposito, as guarantor. Upon the satisfaction of that condition, the interest in the mortgagee is defeased and the mortgage becomes null and void. Therefore, although it does not appear that the attorney trial referee, the trial court or the parties fully explored this matter, we conclude that the obligation in issue in this case is a mortgage. We now must determine whether the mortgage is valid as against third parties, including the plaintiff.

It appears that the parties agree that the central question in this case is whether the mortgage is valid under our decision in *Dart & Bogue Co.* v. *Slosberg,* supra. Although the plaintiff argued in its brief that the purported mortgage did not satisfy the statutory requirements of General Statutes § 49-31b (a),[4] it recognizes that in order to prevail, the mortgage also must be invalid under common law standards. The defendant Tri-Con does not claim that the mortgage satisfies

---

[4] General Statutes § 49-31b (a) provides: "INFORMATION IN DEED SUFFICIENT NOTICE AS TO NATURE AND AMOUNT OF OBLIGATION. DEED FOR VARIABLE RATE MORTGAGE LOAN. (a) A mortgage deed given to secure payment of a promissory note, which furnishes information from which there can be determined the date, principal amount and maximum term of the note, shall be deemed to give sufficient notice of the nature and amount of the obligation to constitute a valid lien securing payment of all sums owed under the terms of such note."

the statutory requirements but only argues that the statute itself does not operate to invalidate its mortgage. Both parties acknowledge that our holding in *Dart & Bogue Co.* establishes § 49-31b (a) as a "safe harbor" statute rather than an exclusive standard for testing the validity of mortgages. Thus, the question confronting us is whether the mortgage satisfies common law standards of validity.[5]

Our opinion in *Dart & Bogue Co.* contained a comprehensive survey of the common law on mortgage deeds and their recording. In that case, we stated that the dispositive question in examining the validity of a mortgage is whether it provides "reasonable notice" to third parties of the obligation that is secured. *Dart & Bogue Co.* v. *Slosberg,* supra, 578, citing *Sadd* v. *Heim,* 143 Conn. 582, 585, 124 A.2d 522 (1956); *Bridgeport Land & Title Co.* v. *Orlove Co.,* 91 Conn. 496, 498–99, 100 A. 30 (1917); *Pettibone* v. *Griswold,* 4 Conn. 158, 162 (1822). The purpose of such "reasonable notice" is to prevent parties that are not privy to the transaction from being defrauded or misled. *Dart & Bogue Co.* v. *Slosberg,* supra, citing *Sadd* v. *Heim,* supra; *Bridgeport Land & Title Co.* v. *Orlove Co.,* supra, 499; *Matz* v. *Arick,* 76 Conn. 388, 391, 56 A. 630 (1904); 2 M. Merrill, Notice (1952) § 1067. A corrollary of this

---

[5] In addition to claiming that the Tri-Con mortgage did not satisfy the statute because it did not provide the date, principal amount or maximum term of the obligation, the plaintiff also argued in its brief that the mortgage did not satisfy the statute because the purpose of the mortgage was to secure the repayment of monies due under a lease. The plaintiff suggests that, according to its express terms, the statute is intended to apply only to security for payment of a promissory note. On the other hand, the defendant Tri-Con claims that this discrepancy makes the statute inapplicable rather than unsatisfied. Because the defendant, however, does not argue that the statute was satisfied in this case even if it were applicable, we need not decide whether General Statutes § 49-31b (a) is applicable to security for repayment of monies under a lease, and, instead, we resort to a common law analysis of the mortgage.

proposition is that "[e]rrors and omissions in the recorded mortgage that would not mislead a title searcher as to the true nature of the secured obligation do not affect the validity of the mortgage against third parties." *Dart & Bogue Co.* v. *Slosberg,* supra, 579. In other words, the recorded mortgage deed does not need to "recite with particularity all of the details of the underlying transaction." Id., 578–79.

In *Dart & Bogue Co.,* we defined "reasonable notice" as "notice of the 'nature and amount of the encumbrance which the mortgagor intends to place upon the land.' " Id., 579, quoting *Sadd* v. *Heim,* supra. "The 'nature' of a secured debt includes such fundamental characteristics as whether the debt is absolute or contingent, liquidated or unliquidated, or whether it is given to secure an existing liability or future advances. *Sadd* v. *Heim,* supra, 585–86; *Merrills* v. *Swift,* [18 Conn. 257, 265 (1847)]. The 'amount' of the debt is the dollar value of the obligation secured, to the extent that it can be ascertained at the time the mortgage is executed. If the debt cannot be definitively ascertained at that time, 'such data must be set out with respect to that debt as will put anyone interested in the inquiry upon a track leading to discovery . . . . ' *Sadd* v. *Heim,* supra, 586; *Hamilton* v. *Nutt,* 34 Conn. 501, 504 (1868); 1 L. Jones, Mortgages (8th Ed. 1928) § 1042." *Dart & Bogue Co.* v. *Slosberg,* supra. Significantly, in *Dart & Bogue Co.,* we recognized that "[t]he record is the starting point for inquiry, not . . . the starting and ending point." Id., 580. In sum, if a party is able " 'by common prudence and by the exercise of ordinary diligence, [to] ascertain the extent of the encumbrance' " from information set out in the land records, then the mortgage is valid. Id., quoting *First National Bank* v. *National Grain Corporation,* 103 Conn. 657, 663, 131 A. 404 (1925).

We now turn to the application of the common law to the facts of this case to determine whether the mortgage is valid against subsequent creditors. We conclude that it is.

The facts of this case are peculiar and distinguishable from those cases cited by the plaintiff in which we invalidated mortgages under the common law. The purpose of preventing fraud, which underlies the common law rule, would not be furthered by invalidating the mortgage in this case, while it was furthered in the cases cited by the plaintiff.

In *Sadd* v. *Heim,* supra, this court held a mortgage invalid because there was an affirmative misidentification of the mortgage as security for a debt currently due when, in fact, half of the mortgage actually was to secure future advances. In *North* v. *Belden,* 13 Conn. 376 (1840), and *Sanford* v. *Wheeler,* 13 Conn. 164 (1839), we held mortgages invalid because in each case the obligation was affirmatively misidentified as absolute when they actually were contingent. In two other cases, *Bridgeport Land & Title Co.* v. *Orlove Co.,* supra, and *Hart* v. *Chalker,* 14 Conn. 76 (1840), the deeds for the purported mortgages did not affirmatively misidentify the characteristics of the transaction, but omitted important characteristics and, unlike the present case, made no reference to other sources from which these characteristics could be discerned.[6]

---

[6] In *Bridgeport Land & Title Co.* v. *Orlove,* 91 Conn. 496, 100 A. 30 (1917), a condition in the mortgage provided that, if the grantor could save the grantee harmless within eighteen months of the date of the mortgage from losses caused by the grantor's failure to deliver "certain flour" to the grantee, then the mortgage was to be void. We held that the use of the term "certain flour" was too vague and indefinite to inform third parties of the obligation's nature, and thus the mortgage was invalid. Id., 499. The mortgage deed omitted important details about the transaction and did not identify other sources where this information could be found.

In *Hart* v. *Chalker,* 14 Conn. 76 (1840), the mortgage omitted the amount of the debt. This court noted that the debt was ascertainable and should have been stated in the deed. Id., 79. Again, there was no reference to any other instrument stating the amount of the debt.

In contrast to these cases cited by the plaintiff, the present case involves the omission of documents that contain important details about the obligation but the existence of which documents was expressly referred to in the recorded mortgage deed. The mortgage deed does not affirmatively misidentify the characteristics of the obligation, thus leading a title searcher to believe that the obligation is something that it is not, nor does the omission of the documents leave a title searcher without any indication of the obligation's nature or without a reasonable direction to discover the terms of the mortgage. The trial court accepted the attorney trial referee's finding that the obligation of Esposito was that of a guarantor. Esposito's guaranty obligation is plainly apparent from the acceleration clause in the recorded mortgage that begins: "Upon Mortgagor's breach of his guaranty of the obligations of Smithfield Glass, Inc. . . . ." Thus, the general nature of the underlying obligation is apparent to a title searcher from the record. Additionally, the address of the mortgagee appears on the first page of the mortgage, although without a zip code, and this facilitates further inquiry. We have already noted that the land records are the starting point for inquiry and not the ending point.

There is no question that the mortgage deed does not contain the amount of the obligation. Tri-Con maintains that the amount could not be ascertained readily because it depended on Smithfield Glass's performance of its lease with Tri-Con. Although the attorney trial referee did not expressly adopt this argument in his factual findings, from examining his report, it is reasonable to assume that he did implicitly adopt it. In the last section of his report, the referee stated that he was repeating the defendant Tri-Con's analysis in its brief of "reasonable notice" in order "to amplify the reasons" for his legal conclusions. In that section, the ref-

eree proffered the rule from *Dart & Bogue Co.* that if the debt cannot be ascertained, " 'such data must be set out with respect to that debt as will put anyone interested in the inquiry upon a track leading to discovery . . . .' " *Dart & Bogue Co.* v. *Slosberg,* supra, 479. Following this discussion, the referee concluded: "For all of the foregoing reasons, the Tri-Con mortgage should be found to be valid and therefore an encumbrance senior in priority to the judgment lien the plaintiff seeks to foreclose." Thus, we conclude that it is logical to infer that the attorney trial referee found the amount of the debt to be unascertainable but also found sufficient data to put a title searcher, exercising common prudence and ordinary diligence, on a track to discovery of the amount due in accordance with our holding in *Dart & Bogue Co.*

The plaintiff alleges that if we hold this mortgage to be valid, it would create a situation which "may lead to fraudulent and iniquitous attempts to defraud bonafide creditors and those holding subsequent encumbrances." We do not believe that our holding, within the narrow circumstances of this case, will create such a situation and we decline to decide the case on this type of speculation. Although there may be a possibility of fraud in other cases with different circumstances, the facts of this case do not indicate fraud nor are they prone to fraud as others might be. The omitted documents were identified in the recorded mortgage and there were in-court assertions by defense counsel that the omission was due to inadvertence. Furthermore, the plaintiffs do not allege a fraudulent scheme in this case. Thus, if we were to hold the mortgage invalid, it would not further the purpose behind the "reasonable notice" requirement of preventing fraud.

In sum, the mortgage deed in this unique case contained sufficient information to inform one searching the land records of the general nature of the obliga-

tion and put the searcher on a track to inquire further and, through common prudence and ordinary diligence, discover the details of the mortgage transaction.

There is no error.

In this opinion GLASS, HULL and MENT, Js., concurred.

CALLAHAN, J., dissenting. The mortgage deed in this case apparently secures two obligations of the defendant Edward J. Esposito, i.e., his guarantee of lease payments and his guarantee to repay advances made by Tri-Continental Leasing Corporation to Smithfield Glass, Inc. The mortgage deed, however, fails to recite the amounts guaranteed, the date of the guarantees or a date the defendant's obligations are to be discharged. Consequently, it is impossible to ascertain from the mortgage deed the term of the mortgage, the amounts secured, whether the defendant's obligations are absolute or contingent, liquidated or unliquidated or whether the mortgage was given to secure an existing liability or future advances.

While the mortgage need not recite all the terms of the underlying obligations, it must give notice of the nature and amount of those obligations. *Dart & Bogue Co.* v. *Slosberg,* 202 Conn. 566, 581, 522 A.2d 763 (1987). This mortgage deed does neither. To affirm the validity of an open-ended security instrument such as the mortgage deed in this case poses a real danger that subsequent lien creditors may be misled or defrauded.

I dissent.