BURT'S SPIRIT SHOP, INC. *v.* EDWARD S.
RIDGWAY ET AL.

BURT'S SPIRIT SHOP, INC. *v.* JANINA M. RIDGWAY
(13928)

PETERS, C. J., SHEA, CALLAHAN, GLASS and HULL, Js.

Argued May 9—decision released June 19, 1990

*Dannell P. Malloy,* with whom was *John V. Bologna,* for the appellants (named defendant et al. in the first case, defendant in the second case).

*Howard R. Wolfe,* with whom, on the brief, were *David Albert* and *Ellen G. Pollack,* for the appellee (plaintiff).

PETERS, C. J. The principal issue in this appeal is the enforceability of notes and mortgages arising out of a sale of a business whose profitability is impaired by the death of a key employee. The plaintiff, Burt's Spirit Shop, Inc., brought an action against the defendants Edward S. Ridgway and Janina M. Ridgway to foreclose mortgages securing a note executed by Janina Ridgway. A second, contemporaneous, action by the plaintiff sought to collect on this and another note executed by her. In counterclaims in these actions, the defendants asserted that the untimely death of Burton Wolk allowed them to rescind the agreements between the parties. The trial court referred both cases to an attorney trial referee who, after a hearing, made findings of fact and recommendations of law in favor of the plaintiff. The trial court accepted the referee's report and rendered judgments accordingly. The defendants filed an appeal to the Appellate Court, which we transferred to this court in accordance with

Practice Book § 4023. We affirm the judgments rendered by the trial court.

There is no dispute about the underlying facts found by the attorney trial referee. In June, 1985, the plaintiff, Burt's Spirit Shop, Inc., contracted to sell its Greenwich liquor store business to the defendant Janina M. Ridgway for $270,000. The purchase agreement contained a provision, expressly described as being "of the essence of this agreement" that obligated Burton Wolk, the plaintiff's president, sole owner and operator, to provide personal services to the new owner for a period of six months following the closing of title. At the closing, on July 1, 1985, the parties confirmed their understanding that this employment obligation would survive the closing. Wolk's services were important because of Janina Ridgway's inexperience in this business and because of Wolk's knowledge of his customers, his merchandise, his charge account procedures and the liquor trade in general.

At the closing, as previously agreed, the plaintiff conveyed to Janina Ridgway the property rights in its business in return for two promissory notes executed by her. The first note was a $220,000 promissory note for the remaining part of the purchase price of the seller's assets (asset note). This note called for periodic payments of principal and interest until its final maturity date of July 1, 1991, and permitted acceleration by its holder in the event of a thirty day default in any of the stipulated periodic payments. The asset note was secured by two mortgages on property owned by Janina Ridgway and her husband, Edward S. Ridgway. The second note was a $95,755.87 note for the value of the stock in trade as of that date (stock note). This unsecured note was to be paid in three specified installments by October 29, 1985.

Wolk's employment in accordance with the purchase agreement began as scheduled. It was prematurely terminated, however, well before its contemplated six month duration, because he suffered a heart attack in August, 1985, and died at the end of that month. There was no evidence that Wolk had known of any heart condition either when the contract of sale was negotiated or at the time of the closing.

Janina Ridgway paid $20,000 on the stock note on July 22, 1985, in accordance with its terms. No other payments had been made on either note when the plaintiff notified both defendants, on January 28, 1986, that each of the notes was in default. Thereafter, on March 19, 1986, Janina Ridgway made a payment of $42,745.35, which, by agreement, was allocated in part to the principal of the stock note and in part to accumulated interest on the stock note and the asset note. During the following month, Edward Ridgway discussed a rescission with the plaintiff's attorney but that suggestion was rejected by the attorney.

On the basis of these findings, and other evidence presented at the hearing, the trial referee concluded that the defendants had not fulfilled the requirements for rescission but were entitled to an offset for the diminution in value of their purchase in light of Wolk's premature death. The referee found that as a result of his death the value of the business had diminished by $22,380 and made a corresponding adjustment in the amount due the plaintiff on the asset note. In all other respects, he found for the plaintiff, awarding it a recovery on the notes, as well as attorney's fees and costs, and the right to foreclose on the mortgaged property.[1] Over the defendants' objection, the trial court rendered judgments in accordance with the referee's report.

---

[1] On the stock note, the attorney trial referee directed judgment for the plaintiff against Janina Ridgway on the unpaid balance of $50,755.87 plus

The defendants' joint appeal from the judgments of the trial court raises the following issues: (1) Should the court have permitted them to rescind their agreement with the plaintiff in light of Wolk's death? (2) If rescission were unavailable, did the court adequately compensate them for the reduction in the value of the business attributable to Wolk's death? (3) Did the court properly construe the payment provisions of the promissory notes? (4) Did the court properly hold their mortgages to be enforceable? (5) Was the court's assessment of fees and costs proper? We are persuaded that the trial court resolved each of these issues correctly.

I

The defendants' principal grounds for appeal concern the consequences of the unforeseeable untimely death of Burton Wolk, on whom the defendants relied for know-how about the retail liquor business that Janina Ridgway had bought. The defendants maintain that the substantial unavailability of his services, which were "of the essence" for the contract of purchase, severely impaired the profitability of the business. This contention comes to us in two versions: the trial court should have permitted rescission in toto, or, at least, should have assigned a higher monetary value as an offset to the amount due on the note and the mortgages securing the notes. On the present record, we disagree.

The defendants cannot prevail in their claim for rescission because of adverse findings of fact by the attorney trial referee. Although Wolk died at the end of August, 1985, Janina Ridgway, having been notified of her default on both promissory notes, made a partial payment on both notes in March, 1986. A month

---

interest and attorney's fees. On the asset note, he directed that its principal balance be reduced by $22,380 from August 11, 1985, and directed judgment on the balance of $197,620 plus interest and attorney's fees.

later,[2] Edward Ridgway first discussed rescission in a general way with the plaintiff's attorney. Janina Ridgway continued, however, to operate the business through the time of trial in 1988. The defendants never offered to restore the plaintiff to its former position, and they never memorialized a request for rescission in writing, as the purchase agreement would have required.[3] These facts support the trial referee's conclusion, which the trial court accepted, that the defendants, at no time after Wolk's death, made a proper offer of rescission. "We have regularly held that it is a condition of rescission and restitution that [the party seeking rescission] offer, as nearly as possible, to place the other party in the same situation that existed prior to the execution of the contract. *Metcalfe* v. *Talarski,* [213 Conn. 145, 153–54, 567 A.2d 1148 (1989)]; *Duksa* v. *Middletown,* 192 Conn. 191, 197, 472 A.2d 1 (1984); *Keyes* v. *Brown,* 155 Conn. 469, 476, 232 A.2d 486 (1967); *Kavarco* v. *T.J.E., Inc.,* [2 Conn. App. 294, 299, 478 A.2d 257 (1984)]." *Bernstein* v. *Nemeyer,* 213 Conn. 665, 675, 570 A.2d 164 (1990).

In light of the conclusion that the defendants did not, in timely and proper fashion, avail themselves of any right to rescission that they might have had in consequence of Wolk's death, we need not discuss the substantive contours of their rescissionary claim. See 2 Restatement (Second), Contracts § 271 (1981). It bears

---

[2] The referee apparently did not find credible Edward Ridgway's testimony that he had discussed rescission with the plaintiff's attorney at meetings held with him in September and October, 1985.

[3] The purchase agreement provided in relevant part as follows:

"22) <u>Modification.</u> This Agreement cannot be modified, changed, altered, discharged or terminated except by a writing signed by the parties. . . .

"25) <u>Notices.</u> Any notice, request, instruction, legal process, or other document to be given hereunder shall be in writing and, except as otherwise provided herein or specifically and in writing directed by the recipient, shall be delivered personally or by registered mail, return receipt requested, as set forth below. . . ."

emphasis, however, that the decision to award a remedy for rescission for breach of contract always depends upon a showing of what justice requires in the particular circumstances, and thus necessarily rests in the discretion of the trial court. *Bernstein* v. *Nemeyer,* supra, and cases there cited.

The defendants' alternate claim with regard to Wolk's death is that the trial court undervalued the financial impact of this event on the business that Janina Ridgway bought. The trial referee concluded that Wolk's death reduced the value of the business, which had been sold for $270,000, by only $22,380. The referee arrived at this conclusion in reliance on a finding based on the expert testimony of the defendants' witness, Frank E. Beame, Jr., that "the Buyer paid $29,000 more than what the expert opined was the fair market value of the Business as of the closing date." The referee took the position that this $29,000 premium represented the value of Wolk's services, and reduced the purchase price proportionately to reflect the fact that August 11, 1985, was the last date that Wolk worked.

The defendants' attack on this factual finding is not properly before us. Having failed to ask the trial court to correct the referee's finding of what the business was worth, the defendants cannot now resurrect that claim here. Practice Book §§ 438, 440; *Seal Audio, Inc.* v. *Bozak, Inc.,* 199 Conn. 496, 518, 508 A.2d 415 (1986). This procedural lacuna cannot be filled by reference to the defendants' altogether conclusory allegations in the trial court that the referee had improperly prevented them from making a proper evidentiary showing about the diminished value of the property.

## II

In addition to their claims for total or partial rescission, the defendants have raised two other challenges

to the enforceability of the obligations on which the plaintiff premised its causes of action. With respect to the asset note signed by Janina Ridgway as maker, they maintain that the plaintiff's suit is premature, the attorney trial referee and the trial court having allegedly misconstrued the due date for payments required by that instrument. With respect to the mortgages, they contend that the absence of a provision in the mortgages that specifies the amounts due renders the mortgages unenforceable at any time. We disagree with both of these claims.

A

The attorney trial referee and the trial court concluded that the plaintiff's exercise of its option to invoke an acceleration clause in the asset note made that note payable in full at the time of the plaintiff's actions. The defendants do not contest the finding of the attorney trial referee that Janina Ridgway never made any payments against the principal amount of the asset note subsequent to the date of the closing. According to the terms of the asset note, payments of principal in the amount of $50,000 were due on January 1, 1986, and July 1, 1986, with the balance to be paid off in monthly installments beginning on August 1, 1986, and continuing until July 1, 1991.[4] The payment provisions of the

---

[4] The promissory note obligated its maker to pay the principal amount of $220,000 and interest at the rate of 12 percent per annum as follows:

"a) On January 1, 1986, a principal payment of FIFTY THOUSAND ($50,000.00) DOLLARS, together with accrued interest on the entire unpaid principal balance;

"b) On July 1, 1986, a principal payment of FIFTY THOUSAND ($50,000.00) DOLLARS, together with accrued interest on the unpaid principal balance;

"c) Commencing August 1, 1986, the then outstanding principal balance of ONE HUNDRED TWENTY THOUSAND ($120,000.00) DOLLARS shall be due and payable, together with interest thereon at the aforesaid rate, in consecutive monthly installments of $2,669.34, commencing on August 1, 1986 and a like sum on the first day of each month thereafter until July 1, 1991 when the entire unpaid principal and accrued interst shall be due and payable.

note conclude with the following: "Provided however, that if not sooner paid, the entire unpaid principal balance, together with accrued interest shall be due and payable July 1, 1991." The defendants maintain that, despite a subsequent acceleration clause making nonpayment of a principal payment an event of default, the final proviso in the payments section of the note in effect confers upon Janina Ridgway the option to choose between two methods of payment, either payment of the entire indebtedness on its due date of July 1, 1991, or prepayment of the indebtedness in accordance with the designated payment schedule. If the defendants' interpretation of the asset note were correct, there would have been no actionable default until 1991.

The drafting of the payment provisions of the asset note leaves a good deal to be desired. On its face, the note creates an apparent conflict between the proviso that it is "due and payable July 1, 1991," and the inclusion of a schedule for specific installment payments that is linked to an acceleration clause. The defendants are correct in their contention that we are obligated to give appropriate effect to the note "as a whole and in such a manner as to give effect to every provision, if reasonably possible." *Hatcho Corporation* v. *Della Pietra,* 195 Conn. 18, 20, 485 A.2d 1285 (1985); *Ingalls* v. *Roger Smith Hotels Corporation,* 143 Conn. 1, 6, 118 A.2d 463 (1955). By itself, however, this rule of construction does not dictate which of two potentially conflicting provisions should be afforded primary weight.

"Provided however, that if not sooner paid, the entire unpaid principal balance, together with accrued interest shall be due and payable July 1, 1991."

The note expressly reserved a right to the maker to prepay and a right to the holder to declare a default making the entire indebtedness immediately due and payable upon a number of stipulated contingencies including "(a) Failure to make payment of principal or interest within thirty (30) days after the same shall be due and payable . . . ."

When a negotiable instrument requires clarification, the Uniform Commercial Code, in General Statutes § 42a-3-119, counsels that "[a]s between the obligor and his immediate obligee . . . the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction . . . ." In this case, the defendants executed their two mortgages as security for the asset note at the time of the closing of the purchase of the plaintiff's business. Both mortages refer to the underlying asset note as having a "final maturity on July 1, 1991," and then spell out in detail, in terms similar to those contained in the note, the rights of the plaintiff to declare the entire indebtedness immediately due and payable in the event of failure "to pay any installment of principal or interest on said promissory note when due." Between these parties, the payment terms of the note are "modified or affected" by the unambiguous acceleration clause in the mortgage. *Jenkins* v. *Thyer,* 760 S.W.2d 932, 935–36 (Mo. App. 1988); see also *Merchants National Bank & Trust Co.* v. *Professional Men's Assn., Inc.,* 409 F.2d 600, 603 (5th Cir. 1969); *Sanden* v. *Hanson,* 210 N.W.2d 404, 408 (N.D. 1972). As a result, like the referee and the trial court, we construe the payment provisions of the note as entitling its holder, the plaintiff, to give notice of a default and to accelerate the principal amount on the ground of Janina Ridgway's nonpayment of installments due before the filing of its lawsuits.

The other negotiable instrument that, at the time of the closing, was "executed as part of the same transaction" was the stock note. The payment provisions of the stock note closely resemble those of the asset note. Yet, as the plaintiff reminds us, the defendants have not challenged the viability of the acceleration clause in the stock note. That fact lends additional support to our construction of the terms of the asset note.

We therefore conclude that the plaintiff properly exercised the acceleration clause in the asset note upon Janina Ridgway's default in the principal payment due January 1, 1986. The plaintiff's subsequent lawsuit to recover the whole of the indebtedness, including both principal and interest, accordingly, was timely.

## B

Even if the asset note is due and payable, the defendants contend that their mortgages securing this obligation are unenforceable because the mortgages do not contain an express statement of the principal amount secured or the applicable rate of interest. The mortgages recite that "Janina M. Ridgway is justly indebted to the grantee in the sum of _____ Dollars, as is evidenced by her promissory note of even date herewith _____ payable to the order of the grantee with _____ interest as set forth therein, with final maturity on July 1, 1991."

In *Connecticut National Bank* v. *Esposito,* 210 Conn. 221, 554 A.2d 735 (1989), we recently reiterated the common law standards that, as between a mortgagee and a third party creditor, determine the validity of a mortgage. We there held that a mortgage is valid if it contains "sufficient information to inform one searching the land records of the general nature of the obligation and put[s] the searcher on a track to inquire further and, through common prudence and ordinary diligence, discover the details of the mortgage transaction." Id., 231–32. In the absence of any factual indication of fraud, we upheld the validity of the mortgage in that case even though the payment obligations it secured were contained in a lease and progress payment agreement that was not attached to the mortgage or otherwise recorded in the land records. Id., 223. That holding is dispositive here.

Indeed, the rule announced in *Esposito* is more stringent than necessary to reject the defendants' claims in this case. "The principle that a mortgage deed must with reasonable certainty set forth the nature and amount of the debt is relevant in determining the validity of the mortgage as against subsequent encumbrancers but not as between the parties themselves. *Thomaston Savings Bank* v. *Warner,* 144 Conn. 97, 100, 127 A.2d 495 [1956]; *Sadd* v. *Heim,* 143 Conn. 582, 585, 124 A.2d 522 [1956]." *State National Bank of Connecticut* v. *Dick,* 164 Conn. 523, 530, 325 A.2d 235 (1973). The defendants cannot prevail in their contention that their mortgages are unenforceable.

### III

The defendants' final claims on this appeal challenge the propriety of the fees and costs assessed against them by the trial court. They contend that (1) it was an abuse of discretion to award fees and costs to the plaintiff alone when the court awarded them an offset from the face amount of the asset note, and (2) the court lacked the authority to award the plaintiff additional attorney's fees without remanding that issue, for a factual finding, to the attorney trial referee. We are unpersuaded.

For their first contention, the defendants rely on Practice Book § 419, which provides, in part, that "[w]henever in any action there shall be two or more issues joined on material allegations, and a part of such issues shall be found for the defendant and the remainder for the plaintiff, the defendant shall recover such costs as were incurred by him upon the issues found in his favor, including fees of witnesses and the expense of summoning them." The record demonstrates, however, that the defendants have failed to preserve any claim to such an award, even if it were justified on its merits, since their exceptions and objec-

tions to the report filed by the attorney referee did not raise this issue. Absent a timely objection, this claim is presently unreviewable. *Seal Audio, Inc.* v. *Bozak, Inc.,* supra, 502–503, 518.

For their final contention, the defendants challenge the propriety of fees and costs that the trial court awarded the plaintiff for expenses incurred subsequent to the proceedings before the attorney trial referee. The defendants maintain that the court was required to remand this matter to the attorney trial referee for his adjudication. We disagree. The mortgages and the promissory notes all contained provisions for the payment of costs of collections including reasonable attorney's fees. The defendants have not contested the validity of these clauses or the reasonableness of the amounts requested by the plaintiff and awarded pursuant thereto. As we held in *Dills* v. *Enfield,* 210 Conn. 705, 713, 557 A.2d 517 (1989), the trial court always retains the authority "to render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee." In the present circumstances, we conclude that the trial court acted within the bounds of its authority.

The judgment is affirmed.

In this opinion the other justices concurred.

