**In re George CAVROS, Debtor.**

**George Cavros, Movant,**

v.

**Fleet National Bank, Respondent.**

**No. 01–20209.**

United States Bankruptcy Court,
D. Connecticut.

April 26, 2001.

Charles A. Maglieri, Bloomfield, CT, Counsel for Debtor—Movant.

Joshua L. Milrad, Edwards & Angell, Hartford, CT, Counsel for Fleet National Bank—Respondent.

Andrew S. Cannella, Hartford, CT, for Molly T. Whiton, Chapter 13 Trustee.

### RULING ON DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

#### I.

George Cavros ("the debtor") on February 8, 2001, filed a motion in his Chapter 13 case, pursuant to § 363(c)(2)[1] of the Bankruptcy Code, for authority to use cash collateral. The debtor is the owner of a certain parcel of rent producing[2] real property located at 207–213 Garden Street, Hartford, Connecticut ("the property"), on which Fleet National Bank ("Fleet") holds a first mortgage and an assignment of rents. The debtor seeks to apply the

---

1. 11 U.S.C. § 363 provides in relevant part:

 (c) (2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

 (A) each entity that has an interest in such cash collateral consents; or

 (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section. . . .

 (e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. . . .

2. The rents arise from both commercial and residential tenants occupying the property.

rents to fund his proposed Chapter 13 plan and to pay his other expenses. Fleet, on a variety of grounds, has objected to the debtor's motion. The parties presented their oral arguments at a hearing on March 21, 2001, after which the debtor, Fleet and the Chapter 13 trustee filed legal memoranda.

## II.

The underlying facts, which are undisputed, establish that the debtor is the present owner of the property, on which Fleet holds a first and also a second mortgage. In addition to the notes and mortgages, the debtor's predecessor in title [3] executed a "Collateral Assignment of Leases and Rents" ("the Agreement"). The first mortgage note being in default Fleet, on or about April 13, 2000, commenced a foreclosure action in state court. Fleet's post-hearing memorandum reveals that the outstanding balance under the first mortgage is approximately $370,000 and the value of the property is $467,000. The debtor filed his Chapter 13 petition on January 23, 2001. The debtor's proposed Chapter 13 plan provides that Fleet will receive 100% of the outstanding balance of the first mortgage, with interest, over five years. The plan confirmation hearing awaits the court's ruling on the instant motion.

## III.

The debtor contends that the rents are cash collateral in which both the debtor and Fleet hold an interest; that Fleet's interest is adequately protected by the value of the property; and that, accordingly, the court should grant the debtor's motion to use the rents to fund his pro-

posed Chapter 13 plan. Fleet objects to the debtor's motion, primarily contending that, under the Agreement, the debtor made an absolute assignment to Fleet of all interests in the rents; that the assignment is represented by a document separate from the mortgage; that the debtor, as of the petition date, retained no interest in the rents; and that the estate, therefore, can have no interest in the rents. Fleet thus denies that the rents constitute cash collateral under § 363(a). Relying primarily on the decision of the Third Circuit Court of Appeals, in *In re Jason Realty, L.P.*, 59 F.3d 423 (3d Cir.1995), which, applying New Jersey law, so held, Fleet urges the court to deny the debtor's motion and to hold that the rents are solely the property of Fleet.

The Chapter 13 trustee supports the debtor's motion. She argues that *Jason*, applying New Jersey law to facts involving an undersecured Chapter 11 debtor, is inapposite to the present proceeding involving Connecticut law and an oversecured Chapter 13 debtor.

## IV.

### A.

Section 363(a) defines cash collateral as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property." The parties agree that Fleet has an interest in the rents pursuant to the terms of the Agreement as well as an interest in rents under the terms of the mortgage. They disagree

---

**3.** The property was previously owned by Ashley Building Company, Inc. ("Ashley"), a corporation wholly owned by the debtor. Prepetition, Ashley transferred the property, subject to all existing encumbrances, to the debtor, who had guaranteed the note. The transfer has no bearing on the issue presently before the court and, for the sake of simplicity, the court will hereafter refer to the debtor as the owner and mortgagor of the property and assignor of the rents.

over whether the debtor, and subsequently the estate, also has an interest in the rents.

Both Fleet and the debtor rely on the terms of the Agreement to establish the Agreement's intent. In support of its contention that the Agreement effected an outright transfer of the rents, Fleet relies on the Agreement's language that:

"Section 1. Assignment. For valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Borrower hereby *transfers, assigns, delivers and grants to the Lender the entire lessor's right, title and interest* in [all leases and rents]. . . .";

and:

"Section 4. . . . A. License to Operate. This assignment is an *absolute assignment* of the Leases from the Borrower to the Lender, provided, however, that so long as there shall exist no Event of Default under the Loan Documents, the Borrower shall have a license to manage and operate the Mortgaged Property and to collect . . . all rents. . . ."

(Agreement at §§ 1, 4 (emphasis added).)

In support of his argument that the Agreement gave Fleet a mortgage on the rents to secure payment of a debt, the debtor points to try title of the Agreement as "*Collateral* Assignment of Leases and Rents" and to the statements in the Agreement that:

"Section 1. . . . this Assignment is made for the *purpose of securing the Obligations* (as defined in the Mortgage recorded herewith) . . . .";

"Section 7 . . . . This Collateral Assignment is granted *solely to secure the payment* and performance of all Obligations . . . .";

"Section 14. *Termination Upon Discharge of Mortgage.* Unless the instrument of discharge provides otherwise, the discharge of the Mortgage at the Land Records shall also constitute a *discharge of this Assignment* and a release of the Lender's interests in the Leases assigned hereby and shall *automatically cause the reassignment* thereof (without recourse to the Lender) to the Borrower. . . .";

and

"The Borrower hereby acknowledges and agrees that the *credit transaction of which this Collateral Assignment is a part shall be governed by the Loan Agreement.* . . . "

(Agreement at §§ 1, 7, 14 and Last ¶ (emphasis added).)

## B.

 The interests of the parties in the property and the rents are determined in accordance with Connecticut law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law. . . . The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property."). An interest in the rents generated by real property is itself an interest in real property which an owner may convey or encumber like any other such interest. *In re Sansone,* 126 B.R. 16, 18 (Bankr.D.Conn.1991) ("Connecticut treats an assignment of rents as a conveyance of an interest in land."). The parties differ on whether the Agreement constituted an outright "sale" of the right to rents to Fleet or whether it imposed a mortgage on the rents to secure payment of the indebtedness. The holding of *Jason* is relevant only to the extent that it may accurately reflect Connecticut law with regard to this issue. It does not.

 It is well established under Connecticut law that a conveyance of an interest in real property, though "absolute on its face, if in fact taken as security for a

debt, constitutes in equity a mortgage." *Sheldon v. Bradley,* 37 Conn. 324, 324 (1870); *French v. Burns,* 35 Conn. 359, 363 (1868) ("The rule that an absolute deed, if intended as security for a debt, is to be regarded as a mortgage, is too well known to require the citation of authorities to support it."); *Guilford–Chester Water Co. v. Town of Guilford,* 107 Conn. 519, 141 A. 880 (1928) ("The controlling consideration in determining whether a transaction is a sale or a mortgage is the intention of the parties. . . . If it resolves itself into security for a debt or other obligation, it will be held to be a mortgage; otherwise a sale.").[4]

■ The court notes that the Agreement clearly provides that the assignment of rents is intended solely for the purpose of securing the indebtedness. Fleet's reliance on the "absolute assignment" language quoted *supra* to support its argument that the Agreement was other than for security purposes is unpersuasive. The comments to the *Restatement (Third) of Property (Mortgages)* state that "it is not uncommon for courts to use the phrase 'absolute assignment,' not with reference to an outright sale or gift of the rents, but rather simply to signify the creation of a security interest in them." *Id.* § 4.2 cmt. b; *also see First Fidelity Bank v. Schiavone,* 1995 WL 519910, *2–5 (Conn.Super.1995) (stating that language in a mortgage document that purported to " 'constitute an absolute and present assignment of the rents . . . . [granting] all right, title and interest of the Mortgagor in and to any [and] all leases' . . . . amount[ed] to a lien upon the rents in the event of a default in the mortgagor's obligations.").

Significantly, Fleet's right to collect the rents pursuant to the Agreement termi-

nates upon discharge of the mortgage. In determining whether a conveyance at issue was a mortgage, the Connecticut Supreme Court "has declared that the particular form of words of the conveyance of is unimportant; and it may be laid down as a general rule . . . that whenever a conveyance, *assignment,* or other instrument transferring an estate, is originally intended between the parties as a security for money . . . it is *always* considered in equity as a mortgage, and consequently is redeemable upon the performance of the conditions or stipulations thereof. In a title theory state such as Connecticut, a mortgage is a vested fee simple interest subject to complete defeasance by the timely payment of the mortgage debt. Under these definitions, it appears that the obligation in this case does qualify as a mortgage at common law. The transaction involved the conveyance of an estate . . . to secure the payment of money due. . . . The condition of the mortgage is the payment of that money by either . . . the principal . . . or by . . . [the] guarantor. Upon satisfaction of that condition, the interest in the mortgage is defeased and the mortgage becomes null and void. Therefore, . . . we conclude that the obligation in issue in this case is a mortgage." *Connecticut National Bank v. Esposito,* 210 Conn. 221, 225–26, 554 A.2d 735 (1989) (emphasis added).

## V.

### *CONCLUSION*

The court concludes that the Agreement is a mortgage of rents under Connecticut law. As such, while the Agreement transferred legal title to the rents to Fleet, the debtor retained the equitable title or equity of redemption, "which persists until it is

---

**4.** Nor is Connecticut unique in this regard. *See, e.g. Peugh v. Davis,* 96 U.S. 332, 336, 24 L.Ed. 775 (1877) (applying District of Colum-

bia law, stating, "It is an established doctrine that a court of equity will treat a deed, absolute in form, as a mortgage.").

extinguished by an action of foreclosure." *State v. Stonybrook, Inc.,* 149 Conn. 492, 496, 181 A.2d 601 (1962); *also see In re Constable Plaza Associates, L.P.,* 125 B.R. 98, 102 (Bankr.S.D.N.Y.1991) (Applying New York law; "Even if ... an absolute assignment ... it would not follow that the debtor's interest in the rent was totally cut off."); *cf. In re Guardian Realty Group, L.L.C.,* 205 B.R. 1, 4 (Bankr.D.D.C.1997) (Applying Delaware law; "Whether in a 'title' state or a 'lien' state, a mortgagee's interest in rents to secure its claim is that of a lienor against, not an owner of, the rents.... As long as the mortgagor is entitled to the rents upon paying the mortgage debt, a security interest has been given, not a transfer of ownership," despite language that granted an "absolute assignment" of rents.).

The court declines to adopt the rationale of *Jason,* because to do so would be contrary to settled Connecticut law. When an assignment of rents is intended as security for a debt, the rents constitute cash collateral under § 363(a). In *Jason,* the Third Circuit held that it was irrelevant, under New Jersey law, whether an assignment was intended as security for a debt. *Jason,* 59 F.3d at 428. In addition, a finding that rents are cash collateral cannot, and should not, be defeated merely because the assignment of rents is contained in a supplemental document separate from the mortgage deed. Fleet's first mortgage is substantially oversecured and presently does not lack adequate protection. The other objections of Fleet have been considered and are either irrelevant or to be asserted at plan confirmation. Fleet's objection is overruled, and the debtor's motion is granted. It is

SO ORDERED.